## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LUNA INNOVATIONS INCORPORATED, et al. | ) Case No. 09-_____ (____) |
| | ) |
| DEBTORS. | ) (Joint Administration Pending) |
| | ) |

## SUMMARY OF ESTIMATION MOTION

For the reasons set forth in the Motion, as summarized below, the Luna debtors request estimation of all claims of Hansen Medical, Inc. at no more than $1,258,177 for all purposes in these cases. Most immediately, Luna requests that the Court set a one-day evidentiary hearing and a schedule for filing briefs and evidentiary submissions on estimation of Hansen's claims.

Hansen's claims arise out of a lawsuit in California state court in which a jury recently found Luna liable for breach of contract and misappropriation of trade secrets. Its verdict form lists $26.1 million of "lost profits" that are not recoverable under Virginia law; direct damages that are capped at no more than $84,100 under the parties' contract; and $10.2 million of unjust enrichment that, when apportioned as required by applicable law and reduced for amounts that are legally unrecoverable, entitles Hansen to no more than $782,718. No judgment has been entered because the California trial court deferred resolution of legal issues (including those above) and equitable remedies that are necessary to fix and liquidate Hansen's claims.

Luna filed bankruptcy to preserve its going concern value for the benefit of its creditors and shareholders. Because Luna could neither satisfy, nor stay pending appeal, a judgment of the magnitude Hansen sought, Luna was vulnerable to being carved up by its creditors during an appeal of Hansen's claims and was at-risk of losing relationships with vendors, contract parties, and employees. Yet Luna also cannot reorganize until final resolution of the issues necessary to fix and liquidate Hansen's claims. Because waiting for the California courts to do so would unduly delay the Debtors' reorganization, Luna requests that the Court estimate Hansen's claims and permit Luna to implement promptly its proposed full-pay plan of reorganization.

8349986

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LUNA INNOVATIONS | ) | Case No. 09-_____ (____) |
| INCORPORATED, *et al.*,[1] | ) | |
| | ) | Joint Administration Requested |
| DEBTORS. | ) | |
| _____ | ) | |

**DEBTORS' MOTION FOR AN ORDER ESTIMATING MAXIMUM**
**ALLOWABLE AMOUNT OF ALL CLAIMS OF HANSEN MEDICAL, INC.**
**FOR ALL PURPOSES IN THESE CHAPTER 11 CASES**

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: Luna Innovations Incorporated (0050) and Luna Technologies, Inc. (0845). The address for both Debtors is 1 Riverside Circle, Suite 400, Roanoke, VA 24016.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   JURISDICTION ................................................................................ 5

III.  BACKGROUND ................................................................................ 5

    A.    LUNA ....................................................................................... 5

    B.    LUNA'S AGREEMENTS WITH HANSEN ........................................ 7

    C.    HANSEN REJECTS LUNA'S OFFERS FOR A LONG-TERM DEAL.............. 8

    D.    HANSEN SUES LUNA IN CALIFORNIA STATE COURT ........................... 9

IV.   RELIEF REQUESTED AND THE REASONS THEREFOR ......................................... 13

    A.    THE COURT MUST ESTIMATE HANSEN'S CLAIMS ................................. 13

        i.    Absent Estimation, Fixing or Liquidating Hansen's Claims Would Unduly Delay Reorganization.............. 13

        ii.   The Court Has Broad Discretion In Setting The Scope And Procedure For Estimation ........................ 20

    B.    THE COURT SHOULD ESTIMATE HANSEN'S CONTRACT CLAIMS AT NO MORE THAN $84,100................................ 22

        i.    Hansen Cannot Recover For Lost Profits As A Matter Of Virginia Contract Law........................ 22

        ii.   The Contract Expressly Limits Hansen's Claim For Direct Damages To At Most $84,100 ............. 24

        iii.  Hansen's Request For Specific Performance Is A Claim Subject To The Contract's Damages Limitation .......... 25

    C.    THE COURT SHOULD ESTIMATE HANSEN'S MISAPPROPRIATION CLAIM AT NO MORE THAN $782,718 ........ 26

        i.    Hansen Cannot Recover More Than The Apportionable Amount of Luna's Past Profits As Unjust Enrichment ........ 26

        ii.   The Court Should Estimate At Zero Or Disallow Hansen's Claim For Punitive Damages................ 28

    D.    THE COURT SHOULD ESTIMATE HANSEN'S CLAIM FOR ATTORNEYS' FEES AT NO MORE THAN $391,359 ........ 30

V.    NOTICE......................................................................................... 31

VI.   CONCLUSION.................................................................................. 31

# TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ..................................................................14, 19

*Alcatel USA, Inc. v. Cisco Systems, Inc.*,
  239 F. Supp. 2d 660 (E.D. Tex. 2002).........................................................27

*Beazer Homes Corp. v. VMIF/Anden Southbridge Vent., LPI*,
  235 F. Supp. 2d 485 (E.D. Va. 2002) ..........................................................23

*Bittner v. Borne Chem. Co.*,
  691 F.2d 134 (3d Cir. 1982)................................................................. passim

*Brockenbrough v. Comm'r*,
  61 B.R. 685 (W.D. Va. 1986) .......................................................................19

*Coastal Masonry, Inc. v. Reliance Ins. Co.*,
  297 B.R. 34 (E.D. Va. 2003).........................................................12, 19, 26

*Davani v. Va. Dep't of Transp.*,
  434 F.3d 712 (4th Cir. 2006) .......................................................................14

*Doe v. Wal-Mart Stores, Inc.*,
  No. 08-55706, 2009 WL 1978730 (9th Cir. 2009) .......................................12

*First City Beaumont v. Durkay (In re Ford)*,
  967 F.2d 1047 (5th Cir. 1992) .....................................................................16

*Glidden Co. v. FV Steel & Wire Co.*,
  350 B.R. 96 (E.D. Wisc. 2006).....................................................................20

*Hebert v. Rapid Payroll, Inc.*,
  2005 WL 6172659 (C.D. Cal. Feb. 9, 2005).................................................24

*In re A.H. Robins Co., Inc.*,
  89 B.R. 555 (E.D. Va. 1988).........................................................................29

*In re All Media Properties, Inc.*,
  5 B.R. 126 (Bankr. Tex. 1980)......................................................................18

*In re Apex Oil Co.*,
  107 B.R. 189 (Bankr. E.D. Mo. 1989)..........................................................16

*In re Brokers, Inc.*,
  No. 04-53451, 2007 WL 4963164 (Bankr. M.D.N.C. Dec. 3, 2007) ...................29

*In re C.F. Smith & Assocs., Inc.*,
  235 B.R. 153 (Bankr. D. Mass. 1999) ..........................................................15

*In re Chateaugay Corp.*,
  944 F.2d 997 (2d Cir. 1991).........................................................................21

*In re CRS Steam, Inc.*,
  225 B.R. 833 (Bankr. D. Mass. 1998) ..........................................................18

*In re Cybermech, Inc.*,
  13 F.3d 818 (4th Cir. 1994) .........................................................................16

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Harbin,*
    486 F.3d 510 (9th Cir. 2007) ................................................................17

*In re Kaplan,*
    186 B.R. 871 (Bankr. D. N.J. 1995) ........................................................22

*In re Lionel L.L.C.,*
    No. 04-17324, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) ......................15

*In re Lopez,*
    367 B.R. 99 (9th Cir. BAP 2007)............................................................30

*In re Newman,*
    259 B.R. 914 (Bankr. M.D. Fla. 2001) .....................................................20

*In re Nova Real Estate Inv. Trust,*
    23 B.R. 62 (E.D. Va. 1982)...................................................................14

*In re Simon,*
    No. 07-31414, 2008 WL 2953471 (E.D. Va. July 29, 2008) ...........................19

*In re Smith,*
    365 B.R. 770 (Bankr. S.D. Ohio 2007) ....................................................20

*In re Stone & Webster,*
    279 B.R. 748 (D. Del. 2002) .................................................................19

*In re Trident Shipworks, Inc.,*
    247 B.R. 513 (Bankr. M.D. Fla. 2000) .....................................................20

*In re Vaughn,*
    276 B.R. 323 (Bankr. D. N.H. 2002) .......................................................20

*In re Ward,*
    194 B.R. 703 (Bankr. D. Mass. 1996) ......................................................18

*In re Wiencko,*
    275 B.R. 772 (Bankr. W.D. Va. 2002) .....................................................14

*In re Windsor Plumbing Supply Co., Inc.,*
    170 B.R. 503 (Bankr. E.D.N.Y. 1994).....................................................21

*Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.),*
    137 B.R. 993 (Bankr. E.D. Mo. 1992)................................................16, 20

*Matter of GAC Corp.,*
    681 F.2d 1295 (11th Cir. 1982) .............................................................29

*Maxwell v. Seaman Furniture Co. (In re Seaman's Furniture Co. of Union Square, Inc.),*
    160 B.R. 40 (S.D.N.Y. 1993)................................................................16

*Nicholson v. Shafe,*
    558 F.3d 1266 (11th Cir. 2009) .............................................................14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
    399 F. Supp. 2d 1064 (N.D. Cal. 2005), aff'd, 221 Fed. Appx. 996 (2007).....................29, 30

*Regency Photo & Video, Inc. v. America Online, Inc.,*
    214 F. Supp. 2d 568 (E.D. Va. 2002) ......................................................24

*Ryan v. Loui (In re Corey),*
    892 F.2d 829 (9th Cir. 1989) ................................................................22

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Sartin v. Macik,*
535 F.3d 284 (4th Cir. 2008) ..................................................................................14

*Schiller & Schmidt Inc. v. Nordisco Corp.,*
969 F.2d 410 (7th Cir. 1992) ..................................................................................27

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ................................................................................................28

*Storage Technology Corp. v. Cisco Systems Inc.,*
(8th Cir. 2005) 395 F.3d 921 ..................................................................................27

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.,*
No. C 08-01780, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008) ...........................14

*Vermont MicroSystems, Inc. v. Autodesk Inc.,*
138 F.3d 449 (2d Cir. 1998)....................................................................................27

## STATE CASES

*Adams v. Murakami,*
54 Cal. 3d 105 (1991) .......................................................................................28, 29

*Ajaxo Inc. v. E*Trade Group, Inc.,*
135 Cal. App. 4th 21 (Cal. Dist. Ct. App. 2005) ..............................................12, 19

*Allen v. Aetna Cas. & Sur. Co.,*
281 S.E.2d 818 (Va. 1981)......................................................................................23

*Berry v. Wortham,*
30 S.E. 443 (Va. 1898).............................................................................................25

*Blue Cross of Southwestern Va. and Blue Shield of Southwestern Va., v. McDevitt & Street Co.,*
360 S.E. 2d 825 (Va. 1987).....................................................................................24

*Duke v. Tobin,*
96 S.E.2d 758 (Va. 1957).........................................................................................25

*Flintkote Co. v. W.W. Wilkinson, Inc.,*
260 S.E. 2d 229 (Va. 1979).....................................................................................24

*In re Blehm,*
33 B.R. 678 (Bank. Colo. 1983) ..............................................................................19

*Kay v. Prof. Realty Corp.,*
281 S.E.2d 820, 222 Va. 348 (1981)........................................................................23

*Markborough Cal., Inc. v. Sup. Ct.,*
227 Cal. App. 3d 705 (1991) ...................................................................................24

*Michelson v. Hamada,*
29 Cal. App. 4th 1566 (1994) ..................................................................................29

*Neal v. Farmers Ins. Exch.,*
21 Cal. 3d 910 (1978) ..............................................................................................29

*Shahood v. Cavin,*
154 Cal. App. 2d 745 (Cal. Dist. Ct. App. 1957)...............................12, 19, 22, 26

## TABLE OF AUTHORITIES
### (continued)

Page

#### STATE STATUTES

Cal. Civ. Code § 3426.3(c) ........................................................................................28

#### FEDERAL RULES

Fed. R. Bankr. P. 2002 ..............................................................................................31

The above-captioned debtors and debtors in possession ("Luna" or the

"Debtors")[1] hereby move (the "Motion") for an order, pursuant to sections 105(a) and 502(c) of

Title 11 of the United States Code (the "Bankruptcy Code"), estimating the maximum allowable

amount of all claims of Hansen Medical, Inc. ("Hansen" or "Hansen Medical") at no more than

$1,258,177 for all purposes in these Chapter 11 cases, including allowance or disallowance of

claims, voting, feasibility and other plan confirmation issues, and distributions.  In furtherance of

this Motion, Luna requests that the Court set a one-day evidentiary hearing and briefing schedule

on the estimation of Hansen's claims, as set forth in the proposed form of order attached hereto

as Exhibit A.  In support of this Motion, Luna respectfully represents as follows:

## I.
## INTRODUCTION

1.      Luna is a small but successful high-technology company with operations

throughout Virginia, including Danville.  Its business involves applying cutting-edge science

such as nanotechnology to develop innovative sensing and instrumentation products and health

care products.  Luna currently employs approximately 202 full and part-time employees in

Virginia, almost half of whom hold either Ph.Ds or other advanced degrees.  Over its nearly

twenty-year history, Luna has become an important part of its local communities, both as a

significant private employer and as an investor.

2.      For Luna to continue playing that role it needs to reorganize quickly and

efficiently—a goal it believes can be achieved.  Accordingly, Luna has filed together with this

Motion a proposed disclosure statement and plan of reorganization that would reinstate Luna's

long-term debt, and pay all allowed general unsecured claims and allowed litigation claims in

full with interest.  Luna hopes to have the plan confirmed and go into effect within 4-5 months of

---

[1] For convenience, and without waiving any rights or arguments as to their separate corporate existence, this Motion refers to the Debtors collectively as "Luna."

filing. This will allow Luna to reinstate its debt, regain access to capital, preserve existing contracts, and maintain its highly skilled workforce.

3.    A single obstacle stands in the way of Luna's successful reorganization: an unresolved lawsuit pending in California state court against Luna Innovations Incorporated. The plaintiff in the suit—Hansen Medical, a company headquartered in California's Silicon Valley— has attempted to bootstrap an $84,100 contract into a $36.3 million damages claim based on speculative "lost profits" that are barred by the contract and illusory unjust enrichment based largely on monies that Luna has never received. Hansen has further asked the California court to impose crippling punitive damages upwards of $20 million on Luna as a warning to other out-of-town companies that might do business in the Silicon Valley.

4.    Hansen's claims threaten to wipe out Luna as a going concern. This would be particularly burdensome to Danville and Blacksburg, where Luna contributes significantly to the local economies. For example, in 2005 Luna rented (with an option to purchase) and renovated Danville's Old Belt Tobacco Storage No. 2 warehouse on Bridge Street for their nanotechnology division. Luna's nanotechnology business has a payroll of approximately $2.5 million per year in Danville for highly-trained scientists. If a delay in reorganization causes Luna—Danville's only nanotechnology firm—to lose its scientists, those scientists will find work at nanotechnology firms outside of Danville, leaving the tobacco storage warehouse empty and a $2.5 million hole in Danville's local economy.

5.    The lawsuit responsible for this predicament stems from a September 2006 contract in which Hansen agreed to pay Luna $84,100 to explore the feasibility of integrating Luna's fiber-optic technology into Hansen's robotic medical catheters. Under the contract, which is governed by Virginia law, Luna agreed to offer Hansen the first opportunity to negotiate an exclusive license to Luna's technology, leaving the specific terms to additional negotiation.

8352048.1                                    -2-

After Hansen turned down Luna's offers, Luna licensed its technology to another company, Intuitive Surgical, Inc. ("Intuitive").

6.    Little more than a week later, Hansen sued Luna in California state court—following through on an earlier warning of an "ugly divorce" if Luna made a deal with Intuitive. Hansen accused Luna of fraud, misappropriation of Hansen's trade secrets, breach of contract, and other misconduct. At trial, Hansen's lawyers assailed the character of Luna's employees, disparaging them as liars "from Virginia" who thought they could cheat a local Silicon Valley company. On April 21, 2009, the California jury reached a verdict. It rejected Hansen's fraud claim but found Luna liable for breach of contract and misappropriation of unspecified trade secrets. Its verdict form lists $26.1 million of "lost profits" and $95,815 in direct damages for breach of contract, and $10.2 million of unjust enrichment for the misappropriation claim.

7.    The California trial court, however, has not entered a judgment on the verdict because it has not yet ruled on legal and equitable issues that affect Hansen's right, if any, to lost profits and unjust enrichment. Most significantly, Hansen's claims for specific performance and $26.1 million in lost profit damages are based on a contractual provision that is unenforceable under clear Virginia law and are in any event expressly barred by a damages limitation clause in the very contract that Hansen alleges Luna breached. As to Hansen's "unjust enrichment" damages for purported misappropriation, $7.1 million is not recoverable as a matter of law, because it consists of future "enrichment" that Luna has not received and (for various reasons, including Luna's consent to a reasonable injunction) will not receive. And the remaining $3.1 million of past "enrichment" has not been apportioned between Luna's own intellectual property and Hansen's alleged trade secrets, as required by applicable law. Hansen also seeks more than $26 million in punitive damages and attorneys' fees, claims that also have yet to be fixed and liquidated by the California trial court. Even if that court were to rule on these issues, its

decision and any resulting judgment would have no preclusive effect while on appeal, which

would be inevitable regardless of which side prevails. That appeal could take one-and-a-half

years or more to conclude.

8.      Luna is now in a precarious position. Given the magnitude of the claims Hansen

alleges, Luna is unable to stay out of bankruptcy because it cannot satisfy a judgment in that

amount or afford a bond to stay enforcement pending an appeal. This has left Luna exposed to

having its assets carved up by its creditors and to losing access to additional capital and credit. It

also strains Luna's relationships with vendors, contract counterparties, and employees. As a

result, Luna has sought bankruptcy protection to preserve its going concern value for the benefit

of its creditors and shareholders.

9.      The magnitude of Hansen's claims, however, also makes it impossible for Luna to

exit bankruptcy until the issues necessary to fix and liquidate those claims are definitively

resolved. Waiting more than a year for Hansen's claims to work their way through the

California courts would cast a cloud over Luna's future and potentially impair its ability to raise

needed capital, retain its skilled workforce, and continue its Small Business Innovation Research

work and other contracts critical to its business. At the same time, simply allowing Hansen's

claims at face value would be highly inequitable both to Luna's other creditors and its 2,200

shareholders. Hansen should not be permitted to hold Luna's reorganization hostage based on

invalid claims.

10.     These are precisely the circumstances under which the Bankruptcy Code

mandates estimation. By applying well-settled principles of Virginia law, this Court can quickly

estimate Hansen's claims and facilitate an efficient and equitable reorganization that would

preserve Luna's going concern value and also spare the estates the delay and expense of further,

protracted litigation in California courts. Accordingly, for the reasons more fully explained

below, Luna requests that the Court estimate the maximum allowable amount of Hansen's claims

as follows:

> (1) $84,100 for Hansen's breach of contract claims, including its request for specific performance, because the parties' contract precludes any additional recovery;
>
> (2) $782,718 for Hansen's misappropriation claim, including its legally unfounded and inequitable request for punitive damages, as a fair estimation of the maximum unjust enrichment to which Hansen could be entitled; and
>
> (3) $391,359 for Hansen's request for attorneys' fees as a fair estimation relative to Hansen's misappropriation damages, the only damages giving rise to a right to seek attorneys' fees.

## II.
## JURISDICTION

11.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue is proper under 28 U.S.C. §§

1408 and 1409; and sections 105(a) and 502(c) of the Bankruptcy Code provide the statutory

bases for relief.

## III.
## BACKGROUND

A.    **LUNA**

12.    Luna is among Virginia's most promising high technology companies.

Headquartered in Roanoke, Luna also has operations in Danville, Charlottesville, and

Blacksburg.  Over its twenty-year history, Luna has created and maintained hundreds of well-

paying jobs in these communities.  Many of its employees are also among Luna's more than

2,200 shareholders.  Luna's stock has been publicly traded on the NASDAQ Global Market since

June 2006.

13.     Luna's employees are not the only ones with a significant stake in the company's future. Since Luna was founded in 1990 by Dr. Kent Murphy, an engineering professor at Virginia Tech, Luna has made significant investments in the communities in which it operates— including contributing $16 million to local universities, and funding more than 400 Virginia students' college educations. Indeed, over the past several years, Luna has been second only to General Motors in funding research at Virginia Tech.

14.     Until being blindsided by the California state court verdict, there was every reason to believe that Luna could continue making these contributions. It owes $5 million in unsecured convertible notes and approximately $2.45 million in trade debt. Luna previously had a $10 million dollar credit facility from Silicon Valley Bank, secured by substantially all of Luna's assets. Luna paid off the $4 million balance and terminated the facility before filing bankruptcy. In short, Luna had been able to manage successfully its capital and liquidity needs before the recent jury verdict.

15.     Luna cannot afford to satisfy a judgment of the magnitude Hansen seeks. Nor can it afford a bond to stay enforcement of a judgment of that size pending appeal. This has left Luna vulnerable to being carved up by its creditors during an appeal of Hansen's largely invalid claims. It also has placed a cloud over Luna's ability to secure capital or credit and to maintain its relationships with vendors, contract parties, and employees. Luna therefore was compelled to seek bankruptcy protection to preserve its going concern value for the benefit of its creditors and shareholders. All of this is the consequence of a dispute over an $84,100 contract with Hansen.

**B.     LUNA'S AGREEMENTS WITH HANSEN**

16.     Although their relationship has taken a decidedly sour turn, Luna and Hansen initially seemed like a good match. Luna makes a unique fiber optic shape sensing technology that involves using a glass fiber to obtain precise information about the position, bends, and

stresses of flexible instruments that contain the fiber. Hansen is a medical company that makes a

robotic catheter that allows surgeons to perform minimally invasive heart surgery. Surgeons

insert the catheter—a small, tube-shaped device—into a patient's heart, where they can guide the

instrument using robotics and computers. By early 2006, Hansen needed technology that would

allow it to locate its catheter with more precision inside a human body. It naturally approached

Luna.

17.    To facilitate discussions, Hansen and Luna signed a non-disclosure agreement

("NDA") on April 1, 2006 to protect both parties' designated confidential information during

negotiations.[2] On September 28, 2006, the parties entered a contract (the "Contract") whereby

Hansen agreed to pay Luna $84,100 to study the feasibility of integrating Luna's fiber optic

shape sensing technology with Hansen's robotic catheter.[3]

18.    Under the Contract, which is governed by Virginia law, the parties agreed that

Hansen would own any new intellectual property created in connection with the feasibility study.

Contract § 5. But the Contract expressly provided that Luna would retain ownership of its

existing, or background, technology and knowledge. *Id.* The Contract contains a confidentiality

provision protecting both parties' intellectual property from unauthorized disclosure, while

leaving the NDA in place to govern designated information disclosed during the preceding

negotiations. *Id.* §§ 14(d), 14(j ).

19.    In addition, the Contract provided that Hansen would have a "right of first

opportunity" for an exclusive license to Luna's technology for use in certain medical

---

[2] Attached as Exhibit B. The Non-Disclosure Agreement as well as the other contracts attached
to this Motion as Exhibit C and Exhibit D are subject to a pending motion to file under seal and
have therefore been attached to this Motion in redacted form. Unredacted copies have been
submitted to Chambers and served on Hansen.

[3] Attached as Exhibit C.

applications, but expressly provided that the "final terms" of any such license would be negotiated by the parties "in good faith and in due time," thus leaving open what the actual contract terms would be. *Id.* § 5, subd. 5. The provision thus did not require that a license be provided, but simply contemplated that the parties would negotiate in good faith to reach terms.

20.    The Contract contained a limitation of liability clause that precluded either party from being held liable for lost profits "arising out of or related to" the Contract or its breach, *id.* § 10(a), while capping Luna's total liability to a specified amount. *Id.* § 10(b). The parties further agreed that this would be Hansen's "exclusive remedy," save for any injury arising out of misappropriation of Hansen's trade secrets. *Id.* § 10(d).

## C.    HANSEN REJECTS LUNA'S OFFERS FOR A LONG-TERM DEAL

21.    After executing the Contract, Luna and Hansen explored the feasibility of integrating their respective technologies. From December 2006 to April 2007, the parties also attempted to negotiate a long-term agreement. During that period, Luna offered Hansen several opportunities to negotiate for an exclusive license to Luna's technology by among other things providing it with draft agreements and other documents containing proposed terms.

22.    On April 12, 2007, Hansen signed a letter of intent that committed the parties to attempt to complete a final agreement by April 30, 2007. The letter of intent proposed terms for payment, intellectual property ownership, and other terms of a long term deal. On April 19, 2007, Luna sent Hansen a proposed definitive agreement. Hansen did not respond until, at midnight on the April 30, 2007 expiration date, it summarily rejected the proposal. That same day, Hansen announced that it had signed a long-term agreement with another company that provided technology similar to Luna's. Shortly thereafter, Hansen paid Luna's final invoice under the Contract.

23.     After the Hansen negotiations fell through, Luna began negotiating in earnest toward an agreement with Intuitive.[4] On June 11, 2007, Luna and Intuitive executed an agreement (the "Intuitive Contract"), which granted Intuitive a license to Luna's shape-sensing technology and required Luna to work on integrating that technology with Intuitive's products.[5]

## D.     HANSEN SUES LUNA IN CALIFORNIA STATE COURT

24.     Intuitive and Hansen were well known to one another:  Intuitive's founder had left the company to become Hansen's CEO.  The parting was not amicable.  Indeed, at one point during Luna's negotiations with Hansen over a long-term exclusive license, Hansen's CEO threatened Luna with an "ugly divorce" if it entered a deal with Intuitive.

25.     Hansen followed through on this threat.  Barely a week after the ink was dry on the Intuitive Contract, Hansen sued Luna in the Superior Court in Santa Clara County, California, asserting claims for misappropriation of trade secrets, aiding and abetting breach of fiduciary duty, unfair competition, breach of contract, conversion, intentional interference with contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and fraud.  Hansen's claims for conversion, unfair competition, aiding and abetting breach of fiduciary duty, and intentional interference with contract all were dismissed or abandoned before trial.

26.     The trial focused on Hansen's allegations that Luna (1) breached the Contract by failing to offer Hansen a right of first opportunity to license Luna's intellectual property; (2) misappropriated Hansen's purported trade secrets in securing the Intuitive Contract; and (3) engaged in fraud by participating in negotiations with Intuitive during the right of first

---

[4] Luna had responded to certain preliminary overtures by Intuitive while attempting to negotiate a long-term deal with Hansen.

[5] Attached as Exhibit D.

opportunity period.  Hansen also alleged other breaches of the Contract, breach of the covenant

of good faith and fair dealing, and breach of the NDA.

27.    During the trial, Hansen presented the jury with a morality play in which a local

Silicon Valley company had been victimized by an unscrupulous Virginia company.  Hansen's

attorneys exploited this theme to characterize all of Luna's employees indiscriminately as liars:

"all these guys, they come in here and fly from Virginia and say they want to tell the truth and

they lie."  Similarly, in urging the jury to punish Luna, Hansen's lawyers admonished the jury

that it needed to "deter" outsiders like Luna from "coming to the Silicon Valley, signing

contracts with people here and then"—according to Hansen—breaching those agreements.

28.    On April 21, 2009, the jury rejected Hansen's fraud claims but found Luna liable

for breach of the "right of first opportunity" and other provisions in the Contract, breach of the

NDA, violation of the covenant of good faith and fair dealing, and misappropriation of trade

secrets.  After the verdict, Hansen requested for an injunction against future misappropriation,[6]

punitive damages of twice the $10.2 million of unjust enrichment damages for misappropriation,

as well as specific performance of the Contract in the form of a license that would contain all the

terms Hansen was seeking in the parties' failed negotiations, and other terms that Hansen never

even sought before.  Hansen also seeks some $6 million in attorneys' fees.

29.    The present state of the trial proceedings leaves unresolved several critical issues

bearing on the ultimate fixing and liquidation of Hansen's claims:

- ***Breach of contract.***  Hansen's principal breach of contract claim for $26.1 million in

    lost profit damages and its request for specific performance can be resolved together

---

[6] The California trial court has not addressed the propriety of Hansen's requested injunction.
Should the Court estimate Hansen's claims as proposed in this Motion (including enjoining Luna
from using any of the items listed on Exhibit E), it would resolve Hansen's request for injunctive
relief.  Luna otherwise reserves its rights to oppose any injunctive relief.

—

by applying Virginia law. Both claims arise from breach of the "right of first opportunity," a contractual provision that is unenforceable under Virginia law because it expressly leaves terms open to be resolved in the future. Further, the damages for breach of that provision consist entirely of lost profits, which are barred by the Contract's limitation of liability clause—a term that *is* enforceable under Virginia law. In addition, Hansen's breach of contract claim for $95,815 of direct damages for other breaches of the Contract is subject to a contractual cap on damages of no more than $84,100. Although the California trial court has not ruled on any of these issues, they reduce Hansen's contract claims to at most $84,100.

- ***Misappropriation***. The jury found Luna liable for misappropriating "one or all" of Hansen's trade secrets and listed $10.2 million in unjust enrichment. This represents 100% of the profits that Hansen projected Luna would earn under the Intuitive Contract—despite the lack of any finding that any trade secret of Hansen's was or is being used in Luna's work with Intuitive. More than $7.1 million of this amount consists of alleged future profits that are not recoverable in the California litigation. This is because Virginia (and California) unjust enrichment law only allows recovery for monies *wrongfully received or retained*, not for monies that are merely *projected* to be received or retained.[7] Moreover, that $7.1 million is contingent on Luna

---

[7] *See Shahood v. Cavin*, 154 Cal. App. 2d 745, 750 (Cal. Dist. Ct. App. 1957) ("anticipatory recovery of moneys to become due in the future" on an improperly-obtained contract should not be included in an award for unjust enrichment); *see also Coastal Masonry, Inc. v. Reliance Ins. Co.*, 297 B.R. 34, 40 (E.D. Va. 2003) (plaintiff could not establish unjust enrichment claim under Virginia law because the defendant "does not have, and has not at any point had, the funds in question"); *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal. App. 4th 21, 56 (Cal. Dist. Ct. App. 2005) (unjust enrichment is analogous to restitution, which is limited to restoration of monies actually received); *Doe v. Wal-Mart Stores, Inc.*, No. 08-55706, 2009 WL 1978730, at *5 (9th Cir. 2009) ("Unjust enrichment is commonly understood as a theory upon which the remedy of restitution may be granted.").

deriving future gains from misappropriation, which will not occur for several reasons,

including Luna's consent to a reasonable injunction against any future use of Hansen's

alleged trade secrets.  And the remaining $3.1 million of past "unjust enrichment"

never has been apportioned between profits derived from Luna's own valuable

intellectual property used in the performance of the Intuitive Contract and any alleged

use of Hansen's trade secrets, as required under controlling law.  Although the

California trial court has not ruled on any of these issues, they reduce Hansen's

misappropriation claim to at most $782,718.

- *Punitive damages*.  The California court has not addressed Hansen's request to impose punitive damages on Luna under California's trade secret statute by trebling the amount of the jury's "unjust enrichment" award.

- *Attorneys' fees*.  Nor has the California court addressed Hansen's request to be awarded *all* of its attorneys' fees, including expenses incurred pursuing claims—such as breach of the Contract, and the claims that Hansen lost before trial—for which no statutory or contractual right to attorneys' fees exists.

30.     The California trial court would need to decide all of these legal and equitable

issues before it could enter a judgment on the jury's verdict.  Regardless of the eventual outcome

in the California trial court, a final judgment on Hansen's claims will not be on the horizon any

time soon:  any judgment inevitably will be challenged on appeal, which may take more than a

year.  Estimation offers the only procedure for quickly and definitively resolving Hansen's

claims.

## IV.
## RELIEF REQUESTED AND THE REASONS THEREFOR

31.    This Court should estimate Hansen's claims at no more than $1,258,177 for all

purposes in these cases, including allowance or disallowance of claims, voting, feasibility and

other plan confirmation issues, and distributions.  As set forth in the proposed order, Luna

proposes that the Court schedule a one-day evidentiary hearing and set dates for the parties to file

briefs and written evidence in support of their respective positions on the appropriate estimation

of Hansen's claims for all purposes.

### A.    THE COURT MUST ESTIMATE HANSEN'S CLAIMS

**i.    Absent Estimation, Fixing or Liquidating Hansen's Claims Would Unduly Delay Reorganization**

32.    Section 502(c) of the Bankruptcy Code provides:

> There shall be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.[8]

As the Fourth Circuit has observed, a court's duty to estimate a claim "in a proper case under

section 502(c) is not a permissive one; it is a mandatory obligation of the bankruptcy court."[9]

33.    This is a proper case for estimation.  Several unresolved legal and equitable issues

leave Hansen's claims unliquidated, contingent, or otherwise subject to estimation.[10]  Although

---

[8] 11 U.S.C. § 502(c).

[9] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011-12 (4th Cir. 1986) (citing *In re Nova Real Estate Inv. Trust*, 23 B.R. 62 (E.D. Va. 1982)).

[10] In different circumstances, the court in *In re Wiencko*, 275 B.R. 772 (Bankr. W.D. Va. 2002), found a claim to be "liquidated" for the purpose of determining a debtor's eligibility to file for Chapter 13 relief where a state court had issued a "final disposition" that "reache[d] the very merits of the action," even though post-trial motions were pending before the state court. *Id.* at 779.  The court emphasized that the post-trial motions did not give the trial court discretion to

no judgment has been (or even *can* be) entered by the California trial court until these various

issues are resolved, a judgment from the state court in either party's favor still would leave Luna

years away from a final adjudication of Hansen's claims. A California trial court judgment is not

final for purposes of res judicata or collateral estoppel while on appeal,[11] which would be

inevitable in this case and could take one-and-a-half years to conclude.

34.    During that time, reorganization in these cases would be on hold because the

sheer size of Hansen's claims will dictate the terms of Luna's reorganization. If Hansen's claims

were allowed at face value, Luna's proposed full-pay plan would not be feasible and Hansen's

claims would dwarf those of any other unsecured creditor for purposes of voting on a plan. On

the other hand, if Virginia (and California) law were applied to preclude Hansen from recovering

on most of its claims, Luna could pursue its proposed full-pay plan. By estimating Hansen's

claims, this Court can save the estates and their stakeholders the substantial delay in reorganizing

that would attend liquidating and fixing Hansen's claims in the California state courts and

prevent the unfairness of accepting Hansen's substantially overstated claims at face value.

---

reduce the amount of the judgment below the eligibility cap for a Chapter 13 case. *Id.* Here, the
jury's verdict addresses only a portion of Hansen's claims. And with respect to those claims that
the jury did address, the pending post-trial motions unquestionably provide a basis to reduce or
entirely eliminate the amounts specified in the jury's verdict.

[11] "Federal courts must give the same preclusive effect to a state court judgment as the forum
that rendered the judgment would have given it[,]" *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir.
2008), and "[u]nder California law, a judgment does not become res judicata until it is free from
direct attack, including appeal," *Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No.
C 08-01780, 2008 WL 4450328, at *8 (N.D. Cal. Sept. 29, 2008). For similar reasons, the
*Rooker-Feldman* doctrine is inapplicable because it limits jurisdiction in federal courts only
where a state court proceeding has ended *before* commencement of the federal action. *See
Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009) (joining the First, Eight, and Tenth
Circuits in concluding that "state proceedings have not ended for purposes of *Rooker-Feldman*
when an appeal from a state court judgment remains pending at the time the plaintiff commences
the federal court action that complains of injuries caused by the state court judgment and invites
review and rejection of that judgment"); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 n.6
(4th Cir. 2006) (*Rooker-Feldman* does not apply before "final judgment[]" in state court).

35.    Indeed, courts have recognized that the need for estimation is particularly compelling where, as here, resolving claims in state court litigation would unduly delay a debtor's reorganization.  In *C.F. Smith & Associates*, for example, the court estimated a creditor's claim by determining the merits of the debtor's appeal from a judgment in the creditor's favor in a pending state court action.[12]  The bankruptcy court did so because no meaningful plan could be proposed until the creditor's claim was fixed and liquidated, but waiting a year for the appeal to be decided in state court would jeopardize the debtor's going concern value and defeat the purpose of Chapter 11.[13]

36.    Estimation makes eminent sense in this context because time is of the essence in a Chapter 11 reorganization.  To preserve going concern value, avoid administrative expenses, and provide prompt distributions, "a reorganization must be accomplished quickly and efficiently."[14]  But to realize these core goals of Chapter 11, all claims against a debtor must be resolved,[15] including litigation claims pending at the commencement of the case.  By estimating these claims, the court can "avoid the need to await the resolution of lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions."[16]  For this reason, courts have affirmed that, in a Chapter 11 case, the "key

---

[12] *In re C.F. Smith & Assocs., Inc.*, 235 B.R. 153, 158 (Bankr. D. Mass. 1999) (court "would establish the amount of the claim by means of adjudicating the merits of the [debtor's] appeal").

[13] *Id.* (noting that continued loyalty of the debtor's customers and employees was at stake and that extending that uncertainty longer would "invite disaster"); *see also In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539, at *3-5 (Bankr. S.D.N.Y. Aug. 3, 2007) (estimating misappropriation claim because the size of the claim prevented an effective reorganization and the delay of awaiting the outcome of the litigation threatened the debtor's going concern value).

[14] *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 137 (3d Cir. 1982).

[15] *See In re Cybermech, Inc.*, 13 F.3d 818, 821 (4th Cir. 1994).

[16] *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992); *see also Maxwell v. Seaman Furniture Co. (In re Seaman's Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (the "expedient method" of estimation is an appropriate and

consideration" in determining whether to estimate unresolved claims pending in another forum "is whether liquidation of that claim" outside of bankruptcy "would unduly delay the . . . reorganization."[17]

37.    In addition to avoiding undue delay, estimation promotes a fair and equitable distribution to creditors "through a realistic assessment" of claims.[18] As the Third Circuit has explained, this fairness objective is particularly important where, as here, it is uncertain whether a valid claim exists, because it would be inequitable to allow a creditor asserting a large (but invalid) claim to control the reorganization.[19]

38.    In this case, estimation of Hansen's claims offers the best avenue for a prompt and fair reorganization. Regardless of the outcome of post-trial motions in California, delaying the reorganization until the state court litigation concludes would impose unnecessary risk on Luna's creditors and other stakeholders. Bankruptcy inevitably raises uncertainty about a company's future. If Luna must stay in bankruptcy until the California courts finally resolve Hansen's claims, it could lose substantial going concern value through the loss of key employees and customers, added expense (or inability) to obtain financing and credit, and declining goodwill. These costs would be borne by creditors holding valid claims, not Hansen, and could result in Luna losing the ability to reorganize as a going concern.

39.    The alternative of allowing Hansen's claims at face value would be even more inequitable. Hansen should not be permitted to overwhelm the estates with invalid claims,

---

mandatory exercise of the court's equitable powers to determine the claimant's distributive share of the estate and facilitate a quicker reorganization).

[17] *In re Apex Oil Co.,* 107 B.R. 189, 192 (Bankr. E.D. Mo. 1989); *see also Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.),* 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) (estimation facilitates "the speedy and expeditious resolution of claims in bankruptcy").

[18] *In re Ford,* 967 F.2d at 1053.

[19] *Bittner,* 691 F.2d at 137.

simply because of the delay of resolving those claims outside of bankruptcy. Moreover, to

confirm a plan before any California appeals have concluded (and regardless of which side

appeals), this Court would need to exercise its own judgment as to the value of Hansen's claims

in determining the feasibility or other confirmation requirements of any reorganization plan.[20] It

therefore makes no sense for this Court to postpone estimating Hansen's claims, particularly

where the uncertain validity of those claims is the only obstacle to confirming promptly a full-

pay plan.

40.       In addition to the compelling need to avoid undue delay, the other elements that

trigger a duty to estimate under section 502(c) are present here. First, liquidating Hansen's

claims arising from the Contract will require judicial determinations that either have not been

made by the California trial court or that can only be made by *this* Court. In particular, while the

jury's verdict listed $26.1 million for lost profits and $95,815 for direct damages, the California

trial court has yet to address the enforceability of the right of first opportunity under Virginia law

or the effect of the Contract's damages limitation clause—critical legal issues bearing on the

ultimate fixed and liquidated amount of Hansen's claims for breach of the Contract.

41.       Moreover, Hansen's request for the equitable remedy of specific performance of

the right of first opportunity is a "claim" that inevitably will need to be estimated by this Court.

Because breach of the right of first opportunity gives rise to an alternative right to payment (i.e.,

additional lost profits), Hansen's request for specific performance is a claim that must be

estimated under section 502(c)(2).[21] This requires the Court to fix a dollar value to Hansen's

---

[20] *In re Harbin*, 486 F.3d 510, 520 n.7 (9th Cir. 2007).

[21] *See, e.g., In re CRS Steam, Inc.*, 225 B.R. 833, 841 (Bankr. D. Mass. 1998) (state court
injunction directing debtor to assign patents as remedy for misappropriation of trade secrets was
a "claim" under § 105(B)). Hansen's request for specific performance constitutes a claim under
§ 101(5)(B) regardless of whether it could argue that the alternative monetary remedy is

loss of performance of the right of first opportunity. In doing so, this Court necessarily will interpret and apply the enforceability of the Contract's right of first opportunity and damages limitation clauses under Virginia law, and thus resolve the very legal issues that stand in the way of fixing and liquidating Hansen's claim for lost profits. For these reasons, Hansen's claims arising from breach of the Contract must be estimated.

42.     Hansen's misappropriation claim likewise requires estimation under section 502(c)(1). As a state law tort claim, it is contingent "until a final judgment is entered fixing the rights of all the parties,"[22] which has not occurred here, and would not occur until appeals conclude. Additionally, Hansen's misappropriation claim is contingent on "the happening or occurrence of an extrinsic event which would trigger liability"[23]—namely, Luna misappropriating Hansen's alleged trade secrets in the future to derive gains from performing the Intuitive Contract. Although the jury found unjust enrichment of $10.2 million, at least $7.1 million of that amount represents future profits that Luna has not received. Because unjust enrichment is a restitutionary remedy, Luna cannot be held liable on that theory in the California

---

"inadequate." *See In re Ward*, 194 B.R. 703, 715 (Bankr. D. Mass. 1996) ("That state courts consider damages inadequate when compared to the equitable remedy of an injunction is beside the point. Although damages for breach of the covenant, particularly damages for lost future profits, are difficult to fix, courts are perfectly capable of doing so."); *CRS Steam*, 225 B.R. at 841 (rejecting argument that equated "inadequacy of monetary relief with its nonexistence").

[22] *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981). *See also A.H. Robins*, 788 F.2d at 1011-12 (unresolved state law tort claims are "contingent claims"); *Bittner*, 691 F.2d at 137 n.5 (state law tort claims against debtor were contingent insofar as "the very existence of the claims in the reorganization proceeding is dependent on a favorable decision by the state court"); *In re Simon*, No. 07-31414, 2008 WL 2953471 at *3 (E.D. Va. July 29, 2008) (holding that tort claims pending in state court were "contingent, unliquidated, disputed claims" subject to estimation); *In re Blehm*, 33 B.R. 678, 679-680 (Bank. Colo. 1983) (noting that tort claims are contingent "because they require proof by the plaintiff creditor of the debtor's liability and the amount of damages are, by their very nature, not fixed unless and until a judgment is entered setting the debtor's liability").

[23] *Brockenbrough v. Comm'r*, 61 B.R. 685, 686 (W.D. Va. 1986).

litigation unless and until it is actually enriched by the proceeds of any misappropriation.[24]  The

$7.1 million is thus contingent on whether Luna misappropriates Hansen's trade secrets in the

future.  Further, Hansen never made a showing that would entitle it to *all* of the profits from

Luna's separate contract with Intuitive.  At a minimum, it will be necessary in liquidating this

claim to apportion any enrichment to misappropriation of Hansen's alleged trade secrets as

opposed to Luna's own intellectual property—an analysis that has not yet been performed as to

any of the unjust enrichment damages listed by the jury.  Where, as here, liability hinges on

future events and liquidation of the amount of damages requires apportionment, the claim is

contingent and unliquidated for purposes of section 502(c)(1).[25]

43.      Finally, Hansen's requests for punitive damages and attorneys' fees remain

unliquidated.  The California trial court has yet to address either request, and there is substantial

discretion for a court to determine what amounts, if any, to award.  Because these claims will call

upon a court to exercise "judgment and discretion rather than simply make an arithmetic

calculation," they are unliquidated.[26]

---

[24] *See Shahood*, 154 Cal. App. 2d at  750; *Coastal Masonry, Inc.*, 297 B.R. at 40; *Ajaxo Inc.*, 135 Cal. App. 4th at 56.

[25] *See, e.g., Bittner*, 691 F.2d at 137 n.5; *In re Stone & Webster*, 279 B.R. 748, 811 (D. Del. 2002) (noting that claimant's "damages claim is contingent because, under the Agreement, it cannot recover for costs due to a breach before it incurs those costs"); *Glidden Co. v. FV Steel & Wire Co.*, 350 B.R. 96, 99-100 (E.D. Wisc. 2006) (contribution claim was contingent where it depended on claimant being assessed costs in the future and on the debtor not exercising its right to withdraw from the contribution agreement).

[26] *See  In re Smith*, 365 B.R. 770, 789 (Bankr. S.D. Ohio 2007) (SEC claim for penalties was unliquidated because it would require exercise of discretion and judgment by trial court); *In re Newman*, 259 B.R. 914, 918 (Bankr. M.D. Fla. 2001) ("Mathematical computation is the basis for a liquidated debt, where opinion, discretion, and exercise of judgment are not relevant for computation of the amount of the debt."); *In re Vaughn,* 276 B.R. 323, 326 (Bankr. D. N.H. 2002) ("[I]f the debt amount is dependent upon a future exercise of discretion by a court . . . the debt is unliquidated.").

ii.     **The Court Has Broad Discretion In Setting The Scope And Procedure
        For Estimation**

44.     This Court may estimate Hansen's claims for all purposes, including allowance,

voting, determining the feasibility of a plan, and distributions under a plan.[27] In choosing an

estimation procedure, this Court has the discretion to use "whatever method is best suited to the

particular contingencies at issue[,]"[28] provided the method applies "the legal rules which may

govern the ultimate value of the claim"[29] and is "consistent with the policy underlying Chapter

11, that a 'reorganization must be accomplished quickly and efficiently.'"[30]

45.     Consistent with these principles, Luna's proposed order would allow this Court to

make a "speedy and rough estimation" of Hansen's claims.[31] Luna proposes that the Court

schedule a one-day evidentiary hearing and set a schedule for the parties' briefs and evidentiary

submissions in support of their respective positions on the appropriate estimation of Hansen's

claims for all purposes.[32]

46.     Far from disturbing the jury's verdict, these procedures will allow this Court to

resolve issues that the jury never reached but are necessary to liquidate and fix Hansen's claims.

Neither the jury nor the California trial court addressed the key legal issues bearing on Hansen's

---

[27] *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) ("It is also well established that the estimation proceeding may be used . . . to determine the allowed amount for distribution purposes."); *Interco*, 137 B.R. at 998 (using estimation to adjudicate and determine debtor's liability and allow any resulting claim).

[28] *Bittner*, 691 F.2d at 135.

[29] *Id.* (noting that "when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law.").

[30] *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) (quoting *Bittner*, 691 F.2d at 137).

[31] *In re Chateaugay Corp.*, 944 F.2d 997, 1006 (2d Cir. 1991).

[32] Because the proposed order contemplates subsequent evidentiary submissions, Luna has not submitted any declarations with this Motion.

right to recover lost profits or to obtain specific performance, namely, the Contract's damages

limitation clause and the enforceability of the underlying "right of first opportunity" provision

under Virginia law.  This Court can resolve both issues by applying Virginia contract law, which

enforces contractual damage limitations but does not give force to contract provisions that, like

the "first opportunity" clause here, leaves terms open to future negotiation.

47.    Similarly, the Court can estimate Hansen's misappropriation claim without

affecting the jury's verdict.  As a matter of law, Luna cannot be unjustly enriched by future

profits that it has not yet received.[33]  And because Luna will consent to the entry of a reasonable

injunction that ensures against future misappropriation as part of estimation, the Court can

estimate Hansen's claim for $7.1 million of future "unjust enrichment" at zero.  Moreover,

applicable law requires apportioning the remaining $3.1 million of Hansen's unjust enrichment

claim between those profits on the Intuitive Contract that are indisputably due to Luna's own

technology and those attributable to Hansen's trade secrets.  At Hansen's insistence, the jury was

not asked to make such an apportionment, and therefore none of Hansen's unjust enrichment

claim (including the $3.1 million of past profits) has been fixed and liquidated through

apportionment.  Finally, the jury never considered Hansen's requests for punitive damages and

attorneys fees, both of which the Court can readily estimate as a matter of law and equity.

**B.      THE COURT SHOULD ESTIMATE HANSEN'S CONTRACT CLAIMS AT NO
MORE THAN $84,100**

**i.      Hansen Cannot Recover For Lost Profits As A Matter Of Virginia
Contract Law**

48.    The jury listed $26.1 million of lost profits as a result of Luna's alleged breach of

the "right of first opportunity" clause in the Contract.  For at least two independent reasons,

---

[33] *See, e.g., Shahood v. Cavin*, 154 Cal. App. 2d at 750.

Hansen cannot recover lost profits for breach of the right of first opportunity as a matter of

Virginia law and therefore this claim should be estimated at zero.[34]

49.      First, under the "right of first opportunity," the parties merely agreed to negotiate

toward a *possible* future license; the Contract expressly contemplates that the "final terms and

conditions" of any such license would "be negotiated by the parties in good faith and in due

time." Contract § 5. Under clear Virginia law, this provision is unenforceable as nothing more

than an "agreement to agree" or an "agreement to negotiate" because it leaves material terms

open to future negotiation.[35]

50.      Second, the Contract expressly precludes recovery of lost profits. Section 10 of

the Contract—entitled "Limitation of Liability"—sets forth the parties' "exclusive remedies."

Contract §§ 10, 10(d). Section 10(a) expressly prohibits either party from recovering "lost

profits" for breach of the Contract:

> In no event shall Luna, its subcontractors or suppliers be liable to
> [Hansen] for *indirect, special or consequential damages
> (including* downtime costs, loss of data, restoration costs, *lost
> profits*, or cost of cover) *arising out of or related to these terms or
> the performance or breach thereof*, even if Luna has been advised
> of the possibility thereof. [emphasis added]

---

[34] *See, e.g., Bittner*, 691 F.2d at 136-37 (bankruptcy court did not abuse it discretion in estimating state law tort claims at zero based on its assessment of the "ultimate merits" of the claims); *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir. 1989) (estimating "highly speculative" claim at zero); *In re Kaplan*, 186 B.R. 871, 873 (Bankr. D. N.J. 1995) (estimating guarantee claims at zero after finding that the guaranteed party "most likely would not succeed on a state court action").

[35] *See Beazer Homes Corp. v. VMIF/Anden Southbridge Vent., LPI*, 235 F. Supp. 2d 485, 491 (E.D. Va. 2002) (Virginia has rejected a more permissive approach, and instead "clearly endorses the traditional rule that such contracts are unenforceable."); *see also Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981) ("an agreement to negotiate at a later date" is not enforceable for any purpose); *Kay v. Prof. Realty Corp.* 281 S.E.2d 820, 821 (Va. 1981) (noting that such an agreement "fails to provide a reasonably certain basis for determining an adequate remedy and therefore is unenforceable").

51.     The "Terms" that lost profits cannot "aris[e] out of" are defined as "[t]hese Terms

and Conditions of Sale and Service"—that is, the Contract as a whole.  *Id.* (opening paragraph).

Thus, Section 10(a) unambiguously prohibits recovery of lost profits for a "breach" of any

provision in the Contract, including the right of first opportunity provision.  This limitation is

enforceable under both Virginia and California law,[36] regardless of the magnitude of Hansen's

actual damages.[37]

52.     Because the right of first opportunity is unenforceable, and because Section 10(a)

expressly precludes Hansen from recovering lost profits for breach of that provision in any event,

the Court should estimate this portion of Hansen's claim for breach of the Contract at zero value.

### ii.     The Contract Expressly Limits Hansen's Claim For Direct Damages To At Most $84,100

53.     In addition to barring lost profits, the Contract also caps Luna's liability for

breach of contract to the "Product purchase price" paid by Hansen to Luna pursuant to the "sales

quotation" attached to the Contract or "otherwise sold to [the] Customer under these Terms."  *Id.*

§ 10(b).  The Contract defines "Product" as "hardware sold or Software listed on the sales

quotation."  *Id.* § 1(a).

54.     Luna did not sell Hansen any hardware or software (thus, any "Product") pursuant

to the Contract, which would imply that Luna's liability is capped at zero if the damages cap

were read literally.  If the provision were read less literally, the most natural reading is that the

---

[36] *See Blue Cross of Southwestern Va. and Blue Shield of Southwestern Va., v. McDevitt & Street Co.,* 360 S.E. 2d 825, 827-828 (Va. 1987); *Markborough Cal., Inc. v. Sup. Ct.,* 227 Cal. App. 3d 705, 714 (1991).

[37] *See Flintkote Co. v. W.W. Wilkinson, Inc.,* 260 S.E. 2d 229, 230 (Va. 1979) (provision limited recovery to refund of purchase price); *Markborough,* 227 Cal. App. 3d at 708 (plaintiff's damages contractually limited to $67,640, even though actual damages exceeded $5 million); *see also Hebert v. Rapid Payroll, Inc.,* 2005 WL 6172659, *6-*7 (C.D. Cal. Feb. 9, 2005); *Regency Photo & Video, Inc. v. America Online, Inc.,* 214 F. Supp. 2d 568, 573 (E.D. Va. 2002).

parties intended the term "Product" to include payments under the Contract for the services Luna

was to perform and for the intellectual property rights Hansen received under the Contract.

Under that reading, Hansen's damages would be limited to $84,100, which is the total that

Hansen paid under the Contract for the "work and service" specified in the attachments to the

Contract.

<div style="margin-left:2em">

iii.    **Hansen's Request For Specific Performance Is A Claim Subject To The Contract's Damages Limitation**

</div>

55.    As noted above, Hansen's request for performance of the right of first opportunity

must be estimated under section 502(c)(2).  This requires the Court to fix a dollar value to

Hansen's loss of performance of the right of first opportunity.  The appropriate value is zero for

two independent reasons.

56.    First, Hansen has made clear that the "right to payment arising from" any breach

of the first opportunity clause would consist entirely of additional lost profits, which are barred

under the Contract and have no value.  Second, as noted above, the right of first opportunity is

not enforceable for any purposes, including specific performance.  Indeed, Virginia courts

require that *all* terms must be agreed upon before specific performance will be granted.[38]

Because no such terms were agreed to here, Hansen clearly is not entitled to specific

performance of a license agreement that never came into being, and its request for specific

performance has no monetary value.

---

[38] *See Duke v. Tobin*, 96 S.E.2d 758, 760 (Va. 1957) ("It is an elementary principle that a court of equity will not specifically enforce a contract unless it be complete and certain. All the essential terms of the contract must be finally and definitely settled."); *Berry v. Wortham*, 30 S.E. 443, 444 (Va. 1898) ("In order that any agreement, . . . whether written or verbal, may be specifically enforced, it must be complete in all its parts; that is, all the terms which the parties have adopted as portions of their contract must be finally and definitely settled, and none must be left to be determined by future negotiations; and this is true without any regard to the comparative importance or unimportance of these several terms").

57.     Accordingly, the Court should estimate Hansen's claims for breach of the

Contract (including the claim for specific performance) at $84,100.

## C.    THE COURT SHOULD ESTIMATE HANSEN'S MISAPPROPRIATION CLAIM AT NO MORE THAN $782,718

### i.    Hansen Cannot Recover More Than The Apportionable Amount of Luna's Past Profits As Unjust Enrichment

58.     Hansen claims that all of the profits that Luna has earned or will earn under the

Intuitive Contract constitute "unjust enrichment," because Luna allegedly secured that agreement

only by misappropriating "one or more" of Hansen's purported "trade secrets." Luna disputes

that Hansen can establish the elements of a misappropriation claim with respect to any of its

alleged trade secrets.  In the interest of a prompt reorganization, however, Luna requests that the

Court estimate the maximum unjust enrichment damages that Hansen may recover as a matter of

law.  As explained below, even assuming Hansen's trade secret allegations had merit, Hansen is

entitled to recover at most $782,718 of unjust enrichment damages.

59.     Most significantly, as a matter of law, Luna cannot be held liable for unjust

enrichment unless and until it actually receives the proceeds of any alleged misappropriation.[39]

Here, Hansen's unjust enrichment claim includes $7.1 million of alleged future profits under the

Intuitive Contract and thus assumes that Luna will derive profits by engaging in *future*

misappropriation.  But Luna can perform, and intends to continue performing, the Intuitive

Contract without misappropriating any of Hansen's trade secrets, real or alleged.[40]

60.     To remove any doubt on this point, and only as part of estimating Hansen's

claims for all purposes, Luna will agree to entry of an order by this Court enjoining it from using

---

[39] *See Shahood*, 154 Cal. App. 2d at 750; *Coastal*, 297 B.R. 34 at 40.

[40] Luna employees have testified, without rebuttal by Hansen, that Luna has never used any of Hansen's alleged trade secrets in its work with Intuitive.

Hansen's alleged trade secrets, as set forth on <u>Exhibit E</u> to this Motion.[41]  While Luna does not

agree that the items on this exhibit actually constitute Hansen's trade secrets, it will consent not

to use the listed items.  By ordering Luna not to use any of the alleged secrets on the exhibit, the

Court will ensure that Luna does not derive any future gains from misappropriation of Hansen's

trade secrets and therefore can estimate Hansen's claim for future unjust enrichment at zero.

61.    This leaves Hansen's claim for Luna's past profits on the Intuitive Contract,

which constitute "unjust enrichment" only insofar as they can be attributed to Hansen's trade

secrets, as opposed to Luna's own technology.[42]  Although Hansen ascribes *all* of those profits to

its alleged trade secrets, the Intuitive Contract expressly recognizes the value of Luna's own

intellectual property:  under that agreement, Intuitive has already paid Luna more than a million

dollars for the exclusive use of Luna's intellectual property (an amount that Hansen nevertheless

includes in arriving at its calculation of $3.1 of past profits from "misappropriation").  And the

contract describes that intellectual property in an exhibit that lists two-and-a-half pages of Luna's

patents and pending patent applications but makes no mention whatsoever of the intellectual

property at issue in the Hansen case.

62.    Given these undisputed facts, controlling law clearly requires *some* apportionment

of Luna's past profits.  While Hansen made no effort to do this, Luna's expert witness testified at

---

[41] <u>Exhibit E</u> is subject to a pending motion to seal.  An unredacted copy  of this exhibit has been
submitted to chambers and served on Hansen.

[42] *See, e.g., Vermont MicroSystems, Inc. v. Autodesk Inc.*, 138 F.3d 449, 450 (2d Cir. 1998)
(under California law, if a "trade secret accounts for only a portion earned on the defendant's
sales . . . an award to the plaintiff of defendant's entire profit may be unjust"); *Storage
Technology Corp. v. Cisco Systems Inc.,* 395 F.3d 921, 926 (8th Cir. 2005) (expert engaged in
"rank speculation" by assuming that entire acquisition value related to trade secrets of acquired
company for purposes of valuing unjust enrichment award); *Schiller & Schmidt Inc. v. Nordisco
Corp.*, 969 F.2d 410, 416 (7th Cir. 1992) (applying same principle); *Alcatel USA, Inc. v. Cisco
Systems, Inc.*, 239 F. Supp. 2d 660, 670 (E.D. Tex. 2002) (court entered summary judgment
disposing of trade secret claim where plaintiff failed "to present evidence of apportionment").

trial that, assuming that Hansen's misappropriation claim were valid, one could attribute at *most* 25% of Luna's profits under the Intuitive Contract to Hansen's alleged trade secrets.  If one accepts Hansen's calculation of Luna's past profits from that agreement, this implies "unjust enrichment" damages of $782,718 (25% of $3,130,871 in past profits as calculated by Hansen).[43] The Court should estimate Hansen's misappropriation claim at no more than this amount.

### ii.    The Court Should Estimate At Zero Or Disallow Hansen's Claim For Punitive Damages

63.    Hansen has asked the California trial court for punitive damages by trebling the jury's unjust enrichment award to over $30 million.  This unliquidated claim should be estimated at zero because, even if Hansen's misappropriation allegations had merit, there would be no basis for punitive damages under both non-bankruptcy and bankruptcy law.

64.    First, punitive damages do not follow automatically from the jury's verdict, and the court has broad discretion to decline to impose such damages.  Although the jury made an unelaborated finding of "malice," that finding is subject to court review for substantial evidence, [44] as is the "reprehensibility" of the conduct for purposes of federal constitutional standards— standards that generally look to whether the harm was personal or purely economic, whether there was a callous disregard for human life, and whether the plaintiff was economically vulnerable.[45]  A reviewing court also must conclude that punitive damages are necessary to

---

[43] Hansen overstates Luna's past profits from the Intuitive Contract.  As of June 2009, Luna's actual profits on the Intuitive Contract were less than a third of Hansen's calculation.  At the Court's request (or if otherwise necessary for estimation), Luna will submit evidence of their actual past profits on the Intuitive Contract.

[44] Cal. Civ. Code § 3426.3(c).

[45] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (reprehensibility is "the most important indicium of the reasonableness of a punitive damages award") (internal quotations omitted).

punish and deter the defendant.[46] All of these factors cut sharply against punitive damages in

this case.[47] The harm here was purely economic, resulting from a commercial relationship

relating to the use of intellectual property. Hansen did not even show a direct injury (as opposed

to an alleged benefit to Luna) from the claimed misappropriation,[48] Hansen is not economically

vulnerable, and imposing punitive damages would be contrary to California public policy where

Luna has already been driven into bankruptcy.[49] Accordingly, the Court should estimate

Hansen's claim for punitive damages at zero.

65.    Second, the Court should exercise its equitable powers, as other courts have done,

to disallow any punitive damages claim against the estates because allowing the claim would

harm other innocent creditors.[50] Indeed, Hansen has requested an award of punitive damages for

the express and improper purpose of increasing the size of its claim in Luna's bankruptcy

relative to other creditors. Basing an award of punitive damages on such considerations would

be inequitable to Luna's stakeholders, particularly where Hansen suffered no direct injury. For

---

[46] *See Adams v. Murakami*, 54 Cal. 3d 105, 110 (1991).

[47] *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 n.13 (1978) (describing factors a court must consider in deciding whether to award punitive damages).

[48] *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1078-1080 (N.D. Cal. 2005), *aff'd*, 221 Fed. Appx. 996 (2007) (finding of unjust enrichment, as opposed to compensatory damages, does not support award punitive damages under the California trade secrets statute).

[49] *See Adams*, 54 Cal. 3d at 111 (1991) (punitive damages should "constitute[] too great a portion of the defendant's net worth and income"); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1596 (1994) (punitive damages "generally are not allowed to exceed 10 percent of the net worth of the defendant").

[50] *See Matter of GAC Corp.*, 681 F.2d 1295, 1301 (11th Cir. 1982) (upholding bankruptcy court's disallowance of punitive damages where effect of allowance would be to punish other innocent creditors); *In re Brokers, Inc.*, No. 04-53451, 2007 WL 4963164, at *3 (Bankr. M.D.N.C. Dec. 3, 2007) ("Equity provides this Court the power to disallow punitive damages if the Court determines that such an allowance would frustrate the successful reorganization of the Company.") (citing *In re A.H. Robins Co., Inc.*, 89 B.R. 555, 562 (E.D. Va. 1988)).

this additional reason, the Court should disallow entirely Hansen's unliquidated claim for

punitive damages as a matter of equity.

**D.   THE COURT SHOULD ESTIMATE HANSEN'S CLAIM FOR ATTORNEYS'
       FEES AT NO MORE THAN $391,359**

66.   Hansen also seeks to recover all of its attorneys' fees—totaling more than $6

million—from the California lawsuit.  But there is no basis for awarding Hansen such a windfall.

Most of the claims that Hansen originally asserted against Luna were dismissed, abandoned, or

rejected by the jury.  As to the claims on which Hansen "prevailed," Hansen has no contractual

or statutory right to attorneys' fees for claims arising from breach of the Contract.  Thus, only the

claims for breach of the NDA (which, unlike the Contract, includes an attorneys' fees clause)

and misappropriation even arguably give rise to an entitlement to attorneys' fees.

67.   The Court should not award Hansen any attorneys' fees for "prevailing" on its

claim that Luna breached the NDA.  Hansen failed even to assert, much less prove, damages for

breach of the NDA.  Awarding Hansen any attorneys' fees for establishing a "breach" that

resulted in no cognizable damages would merely reward and encourage vexatious litigation.

68.   A similar principle should guide this Court in estimating Hansen's request for

attorneys' fees on its misappropriation claim.  For one thing, a final determination of willful and

malicious misappropriation is a "necessary prerequisite" to an award of attorneys' fees under the

California trade secrets statute.[51]  Here, the jury's verdict is not final, and the evidence does not

support a finding of willful or malicious misappropriation in any event.  Even if there were such

evidence, an award of attorneys' fees is entirely discretionary.[52]  In exercising this discretion, the

Court should consider not only the fees that Hansen incurred but also the recovery that Hansen

---

[51] *In re Lopez*, 367 B.R. 99, 106 (9th Cir. BAP 2007).

[52] *See, e.g., O2 Micro Intern. Ltd.,* 399 F. Supp. 2d at 1080 (N.D. Cal. 2005) (denying request for
fees despite jury finding of willful and malicious misappropriation).

obtained.  As discussed above, Hansen is entitled to only $782,718 for misappropriation.  Given

that Hansen has no right to attorneys' fees on its other claims, an award of no more than half that

amount—$391,359—is eminently reasonable here.[53]

## V.
## NOTICE

69.     Notice of this Motion has been given to the following parties or, in lieu thereof, to

their counsel, if known: (a) the Office of the United States Trustee; (b) Luna's former prepetition

lenders; (c) Hansen; and (d) each of Luna's twenty largest unsecured creditors.  Following the

first day hearing in this case, this Motion will be served on the following parties or, in lieu

thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Luna's former

prepetition lenders; (c) Hansen; (d) each of Luna's twenty largest unsecured creditors; and (e)

those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of

Bankruptcy Procedure.  Luna submits that, in light of the nature of the relief requested, no other

or further notice need be given.

70.     No prior request for the relief sought in this Motion has been made to this Court

or any other court.

## VI.
## CONCLUSION

WHEREFORE, Luna respectfully requests that the Court (a) issue an order setting

a hearing to estimate Hansen's claims for all purposes in these cases and a schedule for the

parties' briefing and written evidentiary submissions; (b) following that hearing, issue an order

---

[53] Luna provides this amount for purposes of estimation only and does not in any way admit that
Hansen is entitled to any attorneys' fees.  Should the litigation in California continue
postpetition, or should the Court order an alternative method of estimating Hansen's claim for
attorneys' fees, Luna reserves all rights with respect to Hansen's entitlement to attorneys' fees or
the amount of any fees to which Hansen may be entitled.

estimating Hansen's claims at no more $1,258,177 for all purposes in these bankruptcy cases;

and (c) grant such other and further relief as is proper.

Dated:  July 17, 2009

LUNA INNOVATIONS INCORPORATED, et al.

/s/ A. Carter Magee, Jr.
A. Carter Magee, Jr. (VSB #20284)
[Proposed] Counsel

MAGEE, FOSTER GOLDSTEIN & SAYERS, P.C.
A. Carter Magee, Jr., Esq. (VSB #20284)
Andrew S. Goldstein, Esq. (VSB #28421)
W. Joel Charboneau, Esq. (VSB #68025)
Garren R. Laymon, Esq. (VSB #75112)
310 First Street, S.W., Suite 1200
Roanoke, Virginia  24011
Telephone:  (540) 343-9800
Facsimile:   (540) 343-9898
E-mail:          cmagee@mfgs.com
                     agoldstein@mfgs.com
                     jcharboneau@mfgs.com
                     glaymon@mfgs.com

- and -

PACHULSKI STANG ZIEHL JONES LLP
Laura Davis Jones, Esq.
David M. Bertenthal, Esq.
Joshua M. Fried, Esq.
Timothy P. Cairns, Esq.
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
E-mail:          ljones@pszjlaw.com
                     dbertenthal@pszjlaw.com
                     jfried@pszjlaw.com
                     tcairns@pszjlaw.com

[Proposed] Counsel for the Debtors and
Debtors in Possession

- and -

MUNGER, TOLLES & OLSON, LLP

8352048.1                                    -31-

Mark B. Helm, Esq.
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
E-mail:         mark.helm@mto.com

[Proposed] Special Counsel for the Debtors and
Debtors in Possession

# Exhibit A

**(Scheduling Order on Estimation of Hansen's Claims)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LUNA INNOVATIONS | ) Case No. 09-____ (____) |
| INCORPORATED, et al.,[1] | ) |
| | ) Joint Administration Requested |
| DEBTORS. | ) |
| _____ | ) |

## SCHEDULING ORDER ON ESTIMATION OF HANSEN'S CLAIMS

This matter coming before the Court on the *Debtors' Motion for Order Estimating Maximum Allowable Amount of All Claims of Hansen Medical, Inc. for All Purposes in These Chapter 11 Cases* (the "Motion")[2] filed by the debtors and debtors in possession in the above captioned Chapter 11 cases (collectively, the "Debtors"); the Court having reviewed the Motion, the arguments of counsel, and the record in these cases; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157; (b) service and notice of the Motion was appropriate under the circumstances and adequate; and (c) the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      A one-day evidentiary hearing to estimate all claims of Hansen for all purposes in these bankruptcy case shall be held on ___, 2009;

2.      The Debtors shall file evidentiary submissions and any supplemental briefing in addition to the Motion no later than ___, 2009;

3.      Hansen shall file its brief on estimation and any evidentiary submissions

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: Luna Innovations Incorporated (0050) and Luna Technologies, Inc. (0845). The address for both Debtors is 1 Riverside Circle, Suite 400, Roanoke, VA 24016.

[2] Capitalized terms not defined herein are given the meaning assigned to them in the Motion.

no later than __, 2009;

     4.     The Debtors shall file a reply brief, if any, to Hansen's brief on estimation and its rebuttal evidence, if any, no later than __, 2009.

Dated:_____

                    _____
                    United States Bankruptcy Judge

# Exhibit B

**Mutual Non-Disclosure Agreement**
**Between Hansen Medical, Inc. and Luna Innovations, Inc.**
**Effective April 1, 2006**
**(Subject to Pending Motion to Seal)**

# Exhibit C

**Terms & Conditions of Sale and Service Between
Luna Innovations, Inc. and Hansen Medical, Inc
Dated September 28, 2006
(Subject to Pending Motion to Seal)**

# Exhibit D

**Development and Supply Agreement Between Intuitive
Surgical, Inc. and Luna Innovations, Inc.
Dated June 11, 2007
(Subject to Pending Motion to Seal)**

# Exhibit E

**Proposed List of Hansen Intellectual Property
to be Subject to Injunction**

**(Subject to Pending Motion to Seal)**