**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| LUNA INNOVATIONS | ) | |
| INCORPORATED, <u>et al.</u>, | ) | Case No. 09- 71811 (WFS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |


**OPPOSITION TO DEBTORS' MOTION FOR AN ORDER ESTIMATING
MAXIMUM ALLOWABLE AMOUNT OF ALL CLAIMS OF HANSEN
<u>MEDICAL, INC. FOR ALL PURPOSES IN THESE CHAPTER 11 CASES</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

TABLE OF EXHIBITS ............................................................................................... vii

INTRODUCTION ......................................................................................................... 1

FACTS ........................................................................................................................... 5

    A.    Facts Before the California Jury ........................................................... 5

    B.    Matters Pending Before the California Judge ....................................... 7

    C.    Hansen's Pending Claims for Equitable and Declaratory Relief ........... 8

    D.    Resolution of Matters Remaining in the California Court ................... 10

ARGUMENT ............................................................................................................... 12

    A.    Hansen's Jury Verdict Claim Cannot Be Estimated Under Section 502(c)
Because It Is Neither "Contingent" nor "Unliquidated." .................................... 12

        (1)    Hansen's Claim Is Not "Contingent"; All Events Giving Rise to
Jury Verdict Liability Occurred Well Before the Petition Date .............. 12

        (2)    Hansen's Claim Is Clearly "Liquidated"; It Is "Readily
Ascertainable" and "Readily Calculable," Regardless of the
Absence of Final Judgment in the Hansen Suit, or Whether Luna
Deems Hansen's Claim Disputed ........................................................... 14

    B.    Hansen's Claim Also Cannot Be Estimated Under Section 502(c) Because
the Fixation or Liquidation of Hansen's Jury Verdict Claim Will Not
"Unduly Delay" the Administration of Luna's Bankruptcy Case ...................... 16

        (1)    The Cases on Which Luna Relies Are Inapposite and Inapplicable
to the Facts at Bar ................................................................................. 19

        (2)    The Matters Remaining in the Hansen Suit Will Not "Unduly
Delay" Administration of Luna's Bankruptcy Case ............................... 23

        (3)    The Amount of Time Required for Appellate Review of the
California  Court's Judgment Is Irrelevant for Purposes of
Considering Undue Delay ...................................................................... 25

    C.    This Court Cannot Resolve Title to Hansen's IP via Estimation ........................ 27

        (1)    Luna's Attempt to Estimate Hansen's Claim for Less Than $1.3
Million Is Effectively an Unlawful Forced Sale and Conversion of
Hansen's IP and Related Nonmonetary Rights ....................................... 27

        (2)    Affirmation of Property Ownership Is Not a "Claim." ........................... 29

        (3)    Hansen's IP Cannot Vest in the Debtors via Estimation ........................ 30

i

## TABLE OF CONTENTS
### (continued)

**Page**

    (4)    Luna Cannot Rely on the Equitable Powers of this Court to Obtain Ownership of Hansen's IP ...................................................................... 31

D.    Judicial Economy Favors Resolution of Hansen's Claim by the California Court, Rather Than by Estimation ....................................................................... 32

    (1)    Even If this Court Could Proceed with Estimation, the Costs Associated with  Such Process Would Add Significant Time and Expense ................................................................................................ 32

CONCLUSION.................................................................................................................... 34

SF-2721490

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Robins Co. v. Piccinin*,
     788 F.2d 994 (4th Cir. 1986) ................................................................31

*Anderson v. Conine (In re Robertson)*,
     203 F.3d 855, 863 (5th Cir. 2000) ........................................................30

*Anuco, v. Bus. Cards Tomorrow, Inc. (In re Nugent)*,
     254 B.R. 14 (Bankr. D.N.J. 1998) ................................................ *passim*

*Audre, Inc. v. Casey (In re Audre)*,
     216 B.R. 19 (B.A.P. 9th Cir. 1997)..................................................14, 16

*Bittner v. Borne Chem. Co.*,
     691 F.2d 134 (3d Cir. 1982)..................................................................21

*Connolly v. Nuthatch Hill Assocs. (In re Manning)*,
     831 F.2d 205, 207) (10th Cir. 1987) .....................................................30

*City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*,
     329 F.3d 204 (1st Cir. 2003)..................................................................24

*Denny's, Inc. v. Cake*,
     364 F.3d 521 (4th Cir. 2004) ................................................................31

*Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*,
     202 F.3d 223 (4th Cir. 2000) ................................................................31

*Gorka v. Joseph (In re Atl. Gulf Cmtys. Corp.)*,
     326 B.R. 294 (D. Del. 2005)..................................................................30

*In re A.H. Robins Co.*,
     880 F.2d 709 (4th Cir. 1989) ..........................................................19, 27

*In re Beard*,
     112 B.R. 951 (N.D. Ind. 1990) .............................................................26

*In re C.F. Smith & Assocs., Inc.*,
     235 B.R. 153 (Bankr. D. Mass. 1999) ...................................................20

*In re Casey*,
     198 B.R. 910 (Bankr. S.D. Cal. 1996) .............................................13, 16

*In re Claywell*,
   341 B.R. 396 (Bankr. D. Conn. 2006) ..................................................................30

*In re Griffiths*, No. 06-50256-A,
   2007 Bankr. LEXIS 1557 (Bankr. E.D. Va. May 3, 2007)....................................26

*In re Keenan*,
   201 B.R. 263 (Bankr. S.D. Cal. 1996) .......................................................12, 14, 16

*In re Lionel L.L.C.*, No. 04-17324,
   2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) .............................................20

*In re Loya*,
   123 B.R. 338 (B.A.P. 9th Cir. 1991)...............................................................14, 16

*In re Pasteurized Eggs Corp.*, No. 02-13086-JMD,
   2003 Bankr. LEXIS 828 (Bankr. D.N.H. July 15, 2003)......................................24

*In re RNI Wind Down Corp.*,
   369 B.R. 174, 191 (Bankr. D. Del. 2007) ...................................................12, 13, 17

*In re Robbins*,
   964 F.2d 342 (4th Cir. 1992) ................................................................................32

*In re Rodeo Canon Dev. Corp.*,
   362 F.3d 603 (9th Cir. 2004) ................................................................................30

*In re Twinton Props. P'ship*,
   44 B.R. 426 (Bankr. M.D. Tenn. 1984) ................................................................24

*In re Wiencko*,
   275 B.R. 772 (Bankr. W.D. Va. 2002) .................................................3, 14, 15, 16

*Irizarry v. Schmidt (In re Irizarry)*,
   171 B.R. 874 (B.A.P. 9th Cir. 1994).....................................................................29

*Lippe v. Genlyte Group, Inc.*, No. 98-Civ-8672 (DC),
   2002 U.S. Dist. LEXIS 6024 (S.D.N.Y. Apr. 8, 2002).........................................30

*Modanlo v. Mead*, No. DKC 2006-1168,
   2006 U.S. Dist. LEXIS 96045 (D. Md. Oct. 11, 2006) ........................................24

*Moldo v. Clark (In re Clark)*,
   266 B.R. 163 (9th Cir. B.A.P. 2001).....................................................................30

*Newcom Holdings Pty. Ltd. v. Imbros Corp.*,
   369 F. Supp. 2d 700 (E.D. Va. 2005) ...................................................................31

iv

*Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*,
124 F.3d 619 (4th Cir. 1997) ......................................................................................32

*Sigmon v. Royal Cake Co. (In re Cybermech, Inc.)*,
13 F.3d 818 (4th Cir. 1994) ........................................................................................22

*Slack v. Wilshire Ins. Co. (In re Slack)*,
187 F.3d 1070 (9th Cir. 1999) ....................................................................................15

*Snow v. Countrywide Home Loans, Inc. (In re Snow)*,
270 B.R. 38 (D. Md. 2001) ..........................................................................................26

*Swift v. Bellucci (In re Bellucci)*,
119 B.R. 763 (Bankr. E.D. Cal. 1990) ........................................................................26

## STATUTES

11 U.S.C.

§ 101(5) ..............................................................................................................22, 29, 30

§ 101(5)(A) ..............................................................................................................29, 30

§ 105(a) .........................................................................................................................31

§ 109(e) .........................................................................................................................14

§ 362(d)(1) ......................................................................................................................1

§ 502(c) ................................................................................................................. *passim*

§ 547(b) .........................................................................................................................22

28 U.S.C.

§ 157(b)(5) ..............................................................................................................19, 20

§ 1334(c)(1) .................................................................................................................4, 33

## RULES

Fed. R. Bankr. P. 4001 ............................................................................................................1

Fed. R. Bankr. P. 7001 ..........................................................................................................24

Fed. R. Bankr. P. 9014 ............................................................................................................1

## <u>TABLE OF EXHIBITS</u>

EXHIBIT 1     Brief Rebuttal to Certain of Luna's Factual Contentions Contained in the Estimation Motion

EXHIBIT 2     Jury Verdict Form

EXHIBIT 3     Hansen's Proposed Form of Judgment, attaching Proposed Decree of Specific Performance and Proposed Form of Injunction, filed June 8, 2009.

SF-2721490

1.      Hansen Medical, Inc. ("<u>Hansen</u>")[1] hereby files this opposition (the "<u>Opposition</u>")

to the *Debtors' Motion for an Order Estimating Maximum Allowable Amount of All Claims of*

*Hansen Medical, Inc. for All Purposes in These Chapter 11 Cases* (the "<u>Estimation Motion</u>") for

the reasons set forth herein.[2]

## <u>INTRODUCTION</u>

2.      When the Debtors filed their voluntary Chapter 11 petitions, including the

Estimation Motion, with this Court on Friday, July 17, 2009 (the "<u>Petition Date</u>"), Luna was one

oral argument away from entry of judgment by the Superior Court of the State of California in

the Hansen Suit.  The jury in the Hansen Suit had returned a $36,303,643.91 verdict in Hansen's

favor on April 21, 2009, finding Luna liable for, among other things, breach of contract, breach

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in Hansen's concurrently filed *Motion Under Section 362(d)(1) of the Bankruptcy Code and Rules 4001 and 9014 of the Bankruptcy Rules For Relief from Automatic Stay to Allow California Litigation to Proceed to Judgment* (the "<u>Lift Stay Motion</u>").  Through the Lift Stay Motion, Hansen has sought relief from the automatic stay for "cause" to permit the remaining monetary and nonmonetary Post-Trial Issues to be heard before the California court and to allow that court to proceed to judgment.  The Lift Stay Motion demonstrates, among other things, that based on a totality of the circumstances, Luna's bankruptcy case was filed in bad faith in order to preempt the fully briefed hearing on the Post-Trial Issues and prevent the California court from entering judgment.

Separately, through its Abstention Motion, Hansen has asked this Court to abstain from hearing the Estimation Motion in favor of completing the state court process.  The Lift Stay Motion and Abstention Motion each demonstrate, among other things, the impropriety of employing estimation as a means to relitigate state court issues in this Court.

[2] For clarification purposes, and further to this Court's ruling on July 20, 2009, at the first-day hearing, the Opposition is directed solely at the potential application of Section 502(c) and relevant facts ("<u>Stage 1</u>"), not at the purported merits of estimating Hansen's claims ("<u>Stage 2</u>").  *See Transcript Regarding Hearing Held on July 20, 2009* (hereinafter, the "<u>First Day Transcript</u>") at 105 [Docket No. 132] ("I agree with [Hansen's counsel] that it is a two-stage question.  I would not be at all amenable to in effect scheduling the hearing on [the Debtors' estimation] motion and also to receive evidence on the basis that if the motion were granted what the Court ruling might be.  I think that that would impose significant burden on the parties, which they certainly do not need at this point.")

Nothing in Hansen's omission to address Luna's Stage 2 statements in the Estimation Motion should be regarded as implying any admission or acceptance of such statements.  For this Court's reference, Hansen's rebuttal to certain of Luna's factual misstatements are summarized herein at Exhibit 1.

SF-2721490

of the covenant of good faith and fair dealing, and willful or malicious trade secret
misappropriation.[3]

3.      As of the Petition Date, Hansen had filed briefs and provided record evidence in
support of its requests for Post-Verdict Relief.[4]  Luna had also filed briefs and evidence in support
of its Post-Verdict Challenges.[5]  In total, there were 16 briefs filed by Hansen and Luna leading
up to the hearing on the Post-Trial Issues.[6]

4.      As detailed in Hansen's Lift Stay Motion,[7] in the months following the jury
verdict, Luna continually delayed and avoided the entry of judgment by the California court on
the Post-Trial Issues, delay that now includes filing its Chapter 11 petition just prior to final oral
argument.  In addition to retaining separate IP counsel, Luna retained Pachulski Stang Ziehl &
Jones LLP, able bankruptcy counsel, to advocate the novel theory upon which this entire Chapter
11 case rests: preemptive "estimation" of Hansen's monetary and nonmonetary claims and
reduction of the jury verdict award by 96.5%, premised, in part, on the fact that judgment has not
yet been entered.  All told, Luna spent two months and at least $1,866,985.50[8] on new counsel
(including fees payable to Munger, Tolles & Olson) to prepare its extensive post-trial and
Chapter 11 motions, filing Chapter 11 shortly before Judge Huber had the opportunity enter
judgment.

---

[3] *See* Jury Verdict Form, attached as Exhibit 2 (the "<u>Jury Verdict</u>").

[4] The briefs filed in support of and in opposition to Hansen's remaining claims and rights for relief are provided for
the Court's background at Tabs 23-25 of the Consolidated Appendix ("<u>Con. App.</u>").  Hansen has pending requests
for declaratory judgment, injunctive relief, specific performance, punitive damages, and confirmation of attorneys'
fees, as detailed more fully in the Lift Stay Motion ¶ 31.

[5] As detailed in the Lift Stay Motion, the Post-Trial Issues are comprised of both Hansen's claims for Post-Verdict
Relief and Luna's Post-Trial Challenges. *See* Lift Stay Motion ¶¶ 30-33.

[6] True and correct copies of these post-trial briefs are contained in the Con. App. at Tabs 23-25, and 27-39.

[7] *See* Lift Stay Motion ¶¶ 25-29.

[8] *See id.* ¶ 49 n.51 (citing to Debtors' S*tatement of Financial Affairs, Attachment 9,* "Payments Related to
Bankruptcy," including combined fees paid to four separate law firms from May 5, 2009).

SF-2721490

5.      Luna argues that this Court "must estimate Hansen's claim," and that estimation is a "mandatory obligation."[9]  Luna could only take this position *if* this were "a proper case for estimation."[10]  While Luna could argue that estimation under Section 502(c)[11] is mandatory in certain circumstances, this is no such case.  Indeed, given the facts at bar, estimation of Hansen's Jury Verdict claim is not only unwarranted, it would be entirely unprecedented.

6.      First, Hansen's claim is neither "contingent" nor "unliquidated," a threshold determination regarding the application of Section 502(c).  Hansen's claim is non-contingent because all of the events giving rise to Luna's Jury Verdict liability to Hansen occurred prepetition.  The same is true notwithstanding the absence of judgment on the Post-Trial Issues.  Second, Hansen's claim is liquidated and capable of ready determination based solely on the jury verdict.  Following one and a half years of discovery and a four-week jury trial, the jury fixed the amount owing on Hansen's claim down to the penny.[12]  Thus, as of the Petition Date, Hansen's claim on the jury verdict is readily calculable.  The fact that the Debtors filed their bankruptcy petitions prior to entry of judgment in the California court is entirely irrelevant.[13]

7.      Furthermore, permitting the California court to proceed to judgment would not "unduly delay" the administration of Luna's bankruptcy case.  To the contrary, conducting a fair estimation process proceeding with the Debtors' proposed estimation process would result in

---

[9] Estimation Motion ¶ 32.

[10] *Id.* ¶ 33.

[11] References herein to the "Bankruptcy Code" are to Title 11 of the United States Code, as amended.  Unless otherwise specified, section references herein are to sections of the Bankruptcy Code.

[12] *See* Exhibit 2 at ¶¶ 14-15.

[13] *See, e.g.*, *Anuco v. Bus. Cards Tomorrow, Inc. (In re Nugent)*, 254 B.R. 14, 39 (Bankr. D.N.J. 1998); *see also In re Wiencko*, 275 B.R. 772, 779 (Bankr. W.D. Va. 2002) (Krumm, C. J.) ("[N]owhere in the Bankruptcy Code does it require that a debt be based on a final order to be determined liquidated . . . [i]f appellate review does not affect the liquidity of a claim, the potential for modification at the trial level should not affect liquidity either; in both instances, the debt is not permanently carved in stone and is potentially modifiable.").

significant and non-productive delay and expense, in stark contrast to permitting the California

court to issue its judgment and to rule on Luna's Post-Verdict Challenges.[14]  Allowing the

California court to proceed to judgment now would be far more efficient and much less

expensive than estimation and its consequences, even if this Court were entitled to hear argument

on the Post-Trial Issues in the accelerated, one-day process proposed by the Debtors (which the

Court is not).[15]

8.    In seeking to estimate Hansen's claim, the Debtors effectively have sought a

determination by this Court that the Debtors can retain title to misappropriated IP and obstruct

Hansen's declaratory and equitable relief.  Estimation is not designed to determine property

ownership or related nonmonetary relief.  And the result of estimation should not be to allow the

Debtors to continue misusing Hansen's misappropriated IP for the benefit of Hansen's largest

competitor, yielding additional unjust profits for the Debtors.  For these reasons, and others

detailed below, the Estimation Motion should be denied.

---

[14] *See* Lift Stay Motion ¶¶ 37-41.

[15] All other arguments aside, the posture of this case warrants abstention by this Court under 28 U.S.C. § 1334(c)(1) and the U.S. Supreme Court's *Colorado River* decision.  *See* Abstention Motion ¶¶ 39-41.  Abstention provides additional grounds for lifting the stay to permit the California court to enter judgment and rule on Luna's challenges to the verdict, as well as for this Court to decline to "estimate" Luna's liability and Hansen's intellectual property rights.

SF-2721490

## FACTS[16]

### A.    Facts Before the California Jury.

9.    Luna's filing suggests that the jury verdict was the product of hometown prejudice by a "runaway jury" against a Virginia company that was trapped in the middle of a so-called "ugly divorce."[17]  It was no such thing.  The Silicon Valley jury heard considerable testimony that Luna took Hansen's money and its IP, held hostage a development project critical to Hansen's future in an effort to extract contractual concessions, and, when that failed, used Hansen's IP to land an exclusive deal with Intuitive, Hansen's well-heeled competitor.  The jury was persuaded that these actions violated both Hansen's contractual and trade secret rights.

10.    The jury heard testimony that, as a result of Luna's actions, Hansen was unable to move forward with the technology that it had developed with Luna, seeing the fruits of its investment go to Intuitive instead.  And the jury heard evidence, including testimony from experts, testimony from Hansen's fact witnesses, and Luna's own projections, that Hansen stood to lose at least $26 million over the next five years based on the loss of this technology.[18]

---

[16] The majority of the background facts pertinent to this Opposition are detailed in the Lift Stay Motion, which are incorporated herein by reference.  Rather than restate the voluminous record surrounding the Hansen Suit, Hansen hereby incorporates by reference the documents contained in the Consolidated Appendix ("Con. App."), which compiles the pertinent briefing record from the Hansen Suit related to Stage 1.  The Con. App. will be made available to this Court and Debtors' counsel, and to any party in interest requesting a copy of same.

Hansen notes that very little of the prior history in the Hansen Suit has been accurately or adequately explained in the Debtors' first-day filings or Estimation Motion.  As this Opposition is designed to address Stage 1 (*i.e.*, the applicability of Section 502(c), not the facts surrounding the Post-Trial Issues, which are appropriate for Stage 2), the facts set forth herein focus primarily on addressing the facts pertinent to Stage 1.  Hansen reserves the right to address the incorrect substantive statements made by Debtors in the Estimation Motion at the appropriate time.  To ensure that Luna's account of the issues in the Hansen Suit does not remain entirely unaddressed, however, Hansen attaches brief rebuttals to certain contentions in the Estimation Motion as Exhibit 1.

[17] *See* Estimation Motion ¶ 6; Luna's counsel made this suggestion explicit in oral argument during the first-day hearings.  *See* First Day Transcript at 85:2-4, 104:6-9.

[18] *See, e.g.*, Con. App. Tab 37 at 8 n.2.  This testimony and all of the testimony discussed in these background facts are described in Hansen's post-trial briefing at Tabs 27-39 of the Con. App.  If this Court were to hold that Section 502(c) applied, Hansen would offer similar proof to the voluminous record referenced in those briefs.

5

11.    The jury also heard testimony that Luna used Hansen's trade secrets to obtain an exclusive licensing and supply relationship with Intuitive that effectively blocks Hansen from moving forward with a key enhancement to its core medical robotic catheter business.  And the jury heard testimony that Luna is guaranteed profits of $10.1 million in deferred payments under the Intuitive contract (with projected revenues far in excess of such windfall).

12.    Finally, the jury heard Luna's contrary explanation for these facts[19] in testimony from Luna's engineers and top executives — testimony that was repeatedly shown to be directly at odds with their own contemporaneous documents.  It was well within the provenance of the jury to reject Luna's explanations.  Notably, this was not a jury likely to be confused or overwhelmed by the case: of the 14 Santa Clara County citizens (12 jurors and two alternates) impaneled in the Hansen Suit, four were engineers, one was a contract manager for an international technology firm, one was a middle-school principal, one was a finance director, and one was a sales analyst for a software company.

13.    After four weeks of trial and two days of deliberation, the jury rendered a verdict.[20]  The jury found Luna liable for breach of the NDA,[21] breach of four separate obligations of the TCA, breach of the covenant of good faith and fair dealing, and trade secret misappropriation.  The jury found that Hansen had been damaged by *each* of these wrongs, and awarded Hansen out-of-pocket damages of $95,000 and lost profit damages of $26 million.[22] The jury found that Luna had been unjustly enriched for trade secret misappropriation in the amount of $10.1 million, and made a finding that Luna's trade secret misappropriation was

---

[19] *See* Estimation Motion ¶¶ 16-23.

[20] *See* Exhibit 2.

[21] As is customary in technology collaborations, the NDA was intended to protect Hansen from Luna's misappropriation of Hansen's IP that Hansen shared with Luna.

[22] Exhibit 2 ¶¶ 2, 4, 6, 8 and 14.

SF-2721490

willful or malicious.[23]  Contrary to Luna's complaints about a "runaway jury," the jury found in

Luna's favor on Hansen's fraud claims, and awarded Hansen less than the full amount of

damages than Hansen initially claimed.[24]

**B.    Matters Pending Before the California Judge.**

14.    Contrary to Luna's suggestion that the verdict was replete with legal error, the

case was tried (at Luna's request) in the complex litigation department of Santa Clara County

Superior Court by Judge Joseph Huber, one of the most experienced and well-respected judges

of that court.

15.    Over the course of the Hansen Suit, Judge Huber heard five demurrers, three

summary adjudication motions, 15 motions in limine, two motions for non-suit, and one motion

for directed verdict.[25]  Judge Huber viewed every exhibit and heard every word of testimony

offered at the trial.  Hansen's pending requests for Post-Verdict Relief rest solely on the record

of evidence presented at trial.[26]  Luna's Post-Verdict Challenges are challenges to the same trial

record.[27]

16.    The premise of the Estimation Motion is that "critical issues" prevent the fixing or

liquidation of Hansen's claim, which Luna nevertheless asks this Court to "fix" at a tiny fraction

of the Jury Verdict's monetary relief.[28]  These issues are all fully briefed and ready for resolution

by Judge Huber.

---

[23] Exhibit 2 ¶¶ 9, 10, 15.

[24] Exhibit 2 ¶¶ 11-13.

[25] The docket sheet for the Hansen Suit is attached to Hansen's Motion to Lift Stay, and the briefs on these motions are included in the Consolidated Appendix.

[26] Con. App. Tab 23 at 2.

[27] Con. App. Tabs 27, 30, 33, 36, and 38.

[28] Estimation Motion ¶ 29 (illustrating Luna's request to reduce the Jury Verdict Award by 96.5%).

SF-2721490

17.    More specifically, the Estimation Motion asks this Court to resolve four issues related to settling the monetary portion of Hansen's claim: "breach of contract," "misappropriation," "punitive damages," and "attorneys' fees."[29]   Luna's "estimation" arguments on "breach of contract" (in essence, an attack on the jury's lost profits award) are identical to the arguments in Luna's first and fourth Post-Verdict Challenge motions, as well as in Luna's supplemental motion, and in its opposition to Hansen's claim for specific performance.[30]   Luna's "misappropriation" arguments (in essence, an attack on the jury's unjust enrichment award) are incorporated into its second and third Post-Verdict Challenge motions.[31] Luna's estimation arguments on "punitive damages" and "attorneys' fees" are found in Luna's opposition to Hansen's motion for Post-Verdict Relief.[32]   All told, the parties have filed hundreds of pages of briefing, citing hundreds of exhibits and hundreds more pages of trial testimony on these arguments.   The record makes clear that not one of these issues can be fairly resolved by this Court without a thorough review of the credibility of the witnesses' disputed testimony, the underlying facts supporting Hansen's Jury Verdict claim (facts that the jury has already determined), and the basis for related nonmonetary relief.

## C.    Hansen's Pending Claims for Equitable and Declaratory Relief.

18.    The monetary claims and challenges are not the only issues that have been fully briefed and stand ready for determination in the trial court.   Hansen's claim for Post-Verdict

---

[29] Estimation Motion ¶¶ 29, 48-68.

[30] *See* Con. App. Tabs 24, 27, 29, 36.

[31] Con. App. Tabs 30, 33.

[32] Con. App. Tab 24.

SF-2721490

Relief seeks resolution of the IP issues that form the core of Hansen's rights for declaratory and injunctive relief.[33]

19.    ***Declaratory Judgment***.  As its proposed judgment demonstrates, Hansen seeks a declaration of IP rights established at trial, including ownership over the IP that was created under the TCA — IP that Hansen owns by operation of the agreement.[34]  In addition, Hansen seeks a declaration that it has a presently existing exclusive license to Luna's background technology with right to sublicense for robotic catheter localization applications.[35]  The jury found that Hansen was entitled to this license, and in response to a special interrogatory, confirmed that Hansen had "paid" for the license by deducting $1.5 million from its damages award.[36]

20.    ***Specific Performance***.  The jury found that Luna had breached four different obligations under the TCA.[37] Hansen seeks specific performance of two of these obligations: (i) the obligation to "disclose and provide" Intellectual Property created under the TCA to Hansen; and (ii) the obligation to provide Hansen a license to Luna's background IP on commercially reasonable terms.[38]  The Estimation Motion ignores the first part of the proposed decree, and argues that the second can be monetized at zero because the right of first opportunity to license should be construed as a right to negotiate.[39]  But Luna's arguments regarding the right of first

---

[33] Hansen's Proposed Form of Judgment, including its request for Declaratory Judgment, and attaching Hansen's proposed form of Permanent Injunction and Decree of Specific Performance, is attached at Exhibit 3.

[34] Con. App. Tab 26; Con. App. Tab 23 at 10-17.

[35] Con. App. Tab 26.

[36] Exhibit 2 ¶ 16.

[37] *Id.* ¶  3(a)-(d).

[38] Con. App. Tab 23 at 4-10; *see also* Con. App. Tab 26.

[39] Estimation Motion ¶¶ 55-56.

9

opportunity to negotiate have already been fully briefed, as has Hansen's response. This issue is pending for decision in the California court.[40]

21.     ***Permanent Injunction***. Finally, Hansen has asked that a permanent injunction be entered requiring Luna to stop using the Intellectual Property Hansen owns under the agreement, as well as Hansen's trade secrets, both in accordance with the proof at trial.[41] Luna has proposed its own injunction, which has been filed under seal with this Court and attached as Exhibit E to the Estimation Motion.[42] Determining whether the injunction proposed unilaterally by Luna legitimately protects Hansen's IP rights would require essentially a complete retrial of, among other things, the technical claims in the Hansen Suit. If required to do so in an adversary proceeding in this Court, Hansen would show that the injunction proposed by Luna was deliberately composed to permit it to proceed with its wrongful use of IP that Hansen owns under the TCA on behalf of Hansen's competitor, Intuitive.

**D.     Resolution of Matters Remaining in the California Court.**

22.     The jury delivered its verdict on April 21, 2009.[43] Hansen sought to have its requests for additional relief heard and judgment entered as quickly as possible after the verdict (based in part on Luna's counsel's statements to the jury in closing argument that a large award

---

[40] Con. App. Tabs 23-25, 38-39.

[41] Con. App. Tab 23 at 10-17; *see also* Con. App. Tab 26.

[42] Hansen has not quoted to Luna's proposed injunction as it is currently under seal pursuant to this Court's *Order Authorizing Debtors to File Documents Under Seal* [Docket No. 74]. Upon review by this Court, however, it should be readily apparent that Luna's proposed injunction is considerably incomplete and much narrower in scope than Hansen's.

Notably, despite Luna's representations to this Court that Hansen had been served with the Exhibits to the Estimation Motion (*see* Estimation Motion ¶ 60 n.41) ("Exhibit E  is subject to a pending motion to seal.  An unredacted copy of this exhibit has been submitted to chambers and served on Hansen."), Hansen's counsel did not get a copy of Exhibit E until one week after the Petition Date.  After several requests, Hansen's counsel was told that Luna's counsel needed confirmation from Intuitive's counsel that Exhibit E could be provided.

[43]  *See* Exhibit 2.

SF-2721490

would force Luna into bankruptcy).[44]  Luna, on the other hand, sought repeated delay of the date

for entry of judgment, in part to allow its new counsel to familiarize itself with the case.  Luna

also insisted, however, that its Post-Verdict Challenges — *i.e.*, motions for new trial and JNOV

— be heard at the same time as Hansen's claims for declaratory and equitable relief and punitive

damages.[45]

23.    Judge Huber agreed to the schedule and the procedure proposed by Luna and as a

result, the parties have now fully briefed not only the issues that need to be decided as part of the

judgment, but also the post-trial motions that ordinarily would be filed after the judgment is

entered.  On the day that Luna filed its bankruptcy petition, a hearing on these matters was

imminent (in fact, until the very day before the filing, the hearing with Judge Huber had been

scheduled for the same day as the first-day motions in this case).  Judge Huber had scheduled a

morning hearing for the matter and told counsel that he did not expect the hearing to continue

into the afternoon.

24.    The Post-Trial Issues involve an extensive trial record and complex legal issues

with which Judge Huber is intimately familiar.  By contrast, attempting to resolve these same

issues through "estimation" in this Court would inevitably require consideration of the same trial

record and legal issues, as well as additional rounds of legal briefing and evidentiary hearings

(including testimony of technical experts and damages experts from both sides) in connection

with the adversary proceedings for nonmonetary relief discussed in more detail below.[46]

---

[44] Con. App. Tab 21.

[45] *Id.*

[46] If this Court grants the Lift Stay Motion, Judge Huber may require modest additional preparation time, and may require some additional briefing to update the court on the status of the Hansen Suit and to reschedule a hearing.  In previous motion practice, Judge Huber has issued rulings promptly after oral argument.

## <u>ARGUMENT</u>

**A.      Hansen's Jury Verdict Claim Cannot Be Estimated Under Section 502(c) Because It Is Neither "Contingent" nor "Unliquidated."**

25.      Section 502(c) requires that a claim be "contingent or unliquidated" in order to be estimated by a bankruptcy court.[47]  The prepetition jury verdict is neither "contingent" nor "unliquidated." Generally, a jury verdict for a specified amount of damages can be neither "contingent" nor "unliquidated" because the verdict itself eliminates the contingency and liquidates the amount of the claim.[48]  Moreover, courts have expressly held that a bankruptcy court, without conducting a full retrial, is not in a position to make a more accurate estimate of a claim than the original factfinder did based on the facts at trial.[49]  Estimation is not intended or allowed as a mechanism for reducing a debtor's liability, which is the result that Luna advocates here.[50]

**(1)      Hansen's Claim Is Not "Contingent"; All Events Giving Rise to Jury Verdict Liability Occurred Well Before the Petition Date.**

26.      A claim is not contingent "if all events giving rise to liability occurred prior to the filing of the bankruptcy."[51]  According to the bankruptcy court in *Keenan*, "If all the events upon which a future determination of liability could be based have occurred prepetition, then the claim is not contingent, even though the liability has yet to be fixed."[52]

---

[47] 11 U.S.C. § 502(c)(1) ("There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim . . . .").

[48] *See, e.g.*, *In re Nugent*, 254 B.R. at 37 (denying debtor's motion to estimate creditor claim predicated on prepetition jury verdict and subsequent post-petition judgment because claim was not contingent or unliquidated).

[49] *Id.* at 38.

[50] *See, e.g.*, *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) (denying estimation of a corporate officer's defense cost reimbursement where the court found that the improper goal of the requested estimation was "not to prevent undue delay, but to lower the amount of . . . [the] claim").

[51] *In re Keenan*, 201 B.R. 263, 264 (Bankr. S.D. Cal. 1996).

[52] *Id.* at 265.

SF-2721490

27.    When claims are filed in a bankruptcy case based on litigation pending in other forums, such claims are not contingent simply because the other courts have not entered post-verdict judgments.  In *Casey*, the bankruptcy court held that a post-petition family court judgment based on that court's prepetition decision was not contingent, so that estimation was inappropriate.[53]  The bankruptcy court noted that the family court reached its decision after a three-week bench trial, and that the debtor timed its bankruptcy filing to precede the family court's entry of judgment based on that decision.[54]  Similarly, in *Nugent*, the debtors filed bankruptcy petitions after receiving an unfavorable jury verdict, but before the trial court had entered a judgment, and while it was still considering post-trial motions.[55]  Nevertheless, the bankruptcy court held that estimation under Section 502(c) was unavailable because the claim was "neither contingent nor unliquidated, observing that the "[s]tate [c]ourt [a]ction arose from [the] [d]ebtor's prepetition breach of [contract]."[56]

28.    Here, all of the events giving rise to Luna's Jury Verdict liability occurred prepetition.[57]  All of the events on which the jury based Luna's Jury Verdict liability to Hansen — for example, Luna's breach of contract and its willful or malicious misappropriation of Hansen's trade secrets — were thoroughly presented at trial and carefully considered, resulting in a verdict that preceded the Petition Date by almost three months.  The mere fact that a jury verdict or judgment might be subject to appeal does not affect the contingency of the prepetition

---

[53] *In re Casey*, 198 B.R. 910, 916 (Bankr. S.D. Cal. 1996), *aff'd.*, 1997 Bankr. LEXIS 1769 (9th Cir. Nov. 10, 1997).

[54] *Id.*

[55] 254 B.R. at 19.

[56] *Id.*

[57] Stated another way, "A claim is contingent where it has not yet accrued and . . . is dependent upon some future event that may never happen."  *In re RNI Wind Down Corp.*, 369 B.R. at 182-83 (citation omitted) (discussing difference between "contingent" and "unliquidated" claims and denying estimation for the disputed reimbursement of defense cost claim of corporate officer.).

SF-2721490

events.[58]  Accordingly, Hansen's Jury Verdict claim is not contingent and is thus "not amenable

to estimation under Section 502(c)."[59]

> **(2)**     **Hansen's Claim Is Clearly "Liquidated"; It Is "Readily Ascertainable" and
> "Readily Calculable," Regardless of the Absence of Final Judgment in the
> Hansen Suit, or Whether Luna Deems Hansen's Claim Disputed.**

29.     Whether a debt is "liquidated" depends on whether it is "readily ascertainable"[60]

and "readily calculable,"[61] not whether it is beyond dispute or subject to challenge.[62]  Hansen's

claim cannot be estimated under Section 502(c) because it is capable of ready computation and

has already been liquidated by the California jury.  The jury carefully determined the amounts to

which Hansen is entitled as a result of Luna's liability.[63]

30.     Furthermore, the fact that the California court has not yet issued a judgment on

the Post-Trial Issues does not affect this analysis; the verdict itself resulted in the liquidation of

Hansen's Jury Verdict claim.[64]  In fact, the Bankruptcy Code does not require that a debt be

based on a final order to be determined liquidated.  To the contrary, the Bankruptcy Code defines

debt (coextensively with "claim") to encompass monetary obligations well outside the realm of

---

[58] *See In re Nugent*, 254 B.R. at 38 (noting that a creditor's claim is not contingent just because an underlying state court judgment is on appeal); *Audre, Inc. v. Casey (In re Audre)*, 216 B.R. 19, 30 (B.A.P. 9th Cir. 1997) (holding that the creditors' "claim[s] in the instant case [are] not contingent just because the [state] court judgment is on appeal."), *overruled on other grounds as stated in Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99 (B.A.P. 9th Cir. 2007).

[59] *Id.*

[60]  *In re Wiencko*, 275 B.R. at 779 (internal citation omitted).

[61] *In re Keenan*, 201 B.R. at 266 (citing *In re Loya*, 123 B.R. 338, 340-41 (B.A.P. 9th Cir. 1991)).

[62] *See id.*

[63] *See* Exhibit 2.

[64] In *Nugent*, the court expressly held that "the fact that Debtors filed their petitions prior to the entry of the State Court Judgment does not affect the analysis" and that "because the claim is neither contingent nor unliquidated, estimation, regardless of the applicability of the *Rooker-Feldman* doctrine, would be inappropriate." *In re Nugent*, 254 B.R. at 39; *see also In re Wiencko*, 275 B.R. at 776-781 (analyzing whether a debt is liquidated for purposes of eligibility in the context of Chapter 13 under 11 U.S.C. § 109(e)).

14

finality.[65]  And specifically, Courts have held that claims resulting from jury verdicts are, in fact, liquidated.  In *In re Wiencko*, for example, the court held that a decree nisi[66] not yet entered as a judgment was a liquidated debt.  The court stated, "Nowhere in the Bankruptcy Code does it require that a debt be based on a final order to be determined liquidated,"[67] and also noted that, although the amount of the debt was subject to change as a result of post-trial motions, the debt itself nevertheless was still liquidated.

31.    The *Wiencko* court expressly found that the distinction between liquidated and unliquidated debts does not turn on the finality of a judgment award, nor does it depend on the existence of or the extent of a dispute.  Rather, the court stated, "[A] debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided."[68]  According to the *Wiencko* court:

> It is clear that litigation in the state court has defined the amount of the debt; therefore, the debt appears to be liquidated under both the "readily determinable" and the "readily ascertainable" standards. Substantial hearings or review of evidence are not required to verify the amount of the instant debt. Only the slightest modicum of effort is required to determine the amount of the debt; indeed, the court need only survey the money judgment which was figured down to the penny.[69]

---

[65] *Id.* at 781.

[66] *Id.*, 275 B.R. at 782.  Similar to a jury verdict, the court describes a decree nisi as "a non-appealable interlocutory order which gives the parties an opportunity to examine and object to the proposed disposition of the case before the court enters a final order."  *Id.* at 780.  The jury verdict here is presently non-appealable because it has not been reduced to judgment; it is also subject to further examination and objection through the JNOV and motions for new trial brought by Luna.

[67] *Id.* at 781.

[68] *Id.* at 779 (quoting *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1075 (9th Cir. 1999)).

[69] *Id.* at 779.

SF-2721490

Furthermore, the court reasoned that the terms "disputed" and "unliquidated" have different

meanings and that "a disputed debt is not necessarily unliquidated."[70]

As *Nugent* and *Wiencko* demonstrate, because the state court litigation has proceeded to a

jury verdict (even though no judgment had been entered as of the petition date), Hansen's Jury

Verdict claim is "liquidated."[71]  Logically, a debtor cannot cause an otherwise liquidated claim

to become unliquidated for purposes of Section 502(c) merely by objecting to the claim or

scheduling it as disputed because "a readily calculable claim remains liquidated regardless of

whether it is disputed."[72]

**B.      Hansen's Claim Also Cannot Be Estimated Under Section 502(c) Because the Fixation or Liquidation of Hansen's Jury Verdict Claim Will Not "Unduly Delay" the Administration of Luna's Bankruptcy Case.**

32.      The question whether administration of the case will be unduly delayed would

need to be addressed only if this Court determines that Hansen's Jury Verdict claim is either

unliquidated or contingent.  Assuming arguendo that this determination is made, the additional

prerequisite for estimation under Section 502(c) requires the Debtors to demonstrate that "the

fixing or liquidation of [the claim], as the case may be, would unduly delay the administration of

---

[70] *Id.*

[71] *See In re Nugent*, 254 B.R. at 30 (citing *In re Keenan*, 201 B.R. 263, 266 (Bankr. S.D. Cal. 1996)); *see also In re Audre*, 216 B.R. at 30-31 ("[T]he amount of the claim is not unliquidated because, as of the date of the filing of the chapter 11 case, it was easily subject to ready determination — the [state] court had already determined the amount of the claim to be $11.5 million."); *In re Casey*, 198 B.R. at 916 (holding that estimation was inappropriate because a claim was liquidated where a state family court had announced a tentative decision stating the amount of the debtor's liability prior to the filing of the debtor's bankruptcy petition.  The family court had not entered a judgment based on that tentative decision at the time of the bankruptcy filing).

[72] *In re Keenan*, 201 B.R. at 266 (citing *In re Loya*, 123 B.R. at 340-41).

SF-2721490

the case."[73]  Permitting the California court to complete its process and enter a judgment will not

"unduly delay" the administration of Luna's case.[74]

      33.     In *In re Dow Corning Corp.*,[75] one of the most comprehensive judicial decisions

on estimation, the court explained:

> Something is "undue" if it is "unjustifiable." . . . Inquiry into
> whether liquidating the tort claims would be unjust, due to any
> case delay that results therefrom, dictates that the Court perform a
> kind of cost-benefit analysis by considering the time, costs and
> benefit associated with both estimation and liquidation [by trial].[76]

      34.     No estimation can be required before this Court makes an "undue delay"

finding.[77]  And here, the Debtors have not put forth any admissible or compelling evidence[78]

explaining why allowing the California court to rule on the Post-Trial Issues would unduly delay

their bankruptcy case.[79]  In fact, to the extent the Debtors seek to "fix" Hansen's claim, the

---

[73] 11 U.S.C. § 502(c)(1).

[74] Hansen addresses Luna's *Rooker-Feldman* argument in its Abstention Motion.  Hansen reserves the right to address, as needed, the complex law that was limited by the Supreme Court's *Exxon* decision, but not limited in a way that allows this Debtor to escape its application.  *Exxon* had no effect on the other arguments for relief from the stay or contained in the Abstention Motion.  When one court criticizes another decision pre-*Exxon* for exceeding the *Exxon*-narrowed scope of *Rooker-Feldman*, that has no impact whatsoever on the other comity, abstention, or other alternative grounds for such rulings.

[75] 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997) (denying estimation of mass torts against solvent breast implant manufacturer, noting trial benefits included (i) inaccuracy of estimation; and (ii) avoidance of cost and delay involved in litigation over the estimation process, including appeals and Section 502(j) reconsideration).

Because the Post-Trial Issues cannot fully be resolved by estimation and would allow for reconsideration of any estimation of Hansen's claims pursuant to Section 502(j), estimation in this case would, similar to *Dow*, necessarily result in promoting defensive litigation by Hansen outside the scope of Section 502(c).

[76] *Id.* at 563.

[77] *See, e.g., In re RNI Windown Corp.*, 369 B.R. at 191.

[78] The only "evidence" for the Debtors' position is contained in the Messick Affidavit, and Hansen objects to the relevant portion of the Affidavit as inadmissible for many reasons, including that Mr. Messick's statements lack any foundation, are based on hearsay and speculation, and because Mr. Messick is not qualified to offer an expert opinion.

[79] The Debtors' only argument relates to appellate delay, although Debtors appear to have disregarded the critical distinction between the post-trial/pre-judgment phase of litigation versus the appeals process, wrongly implying that in order for a verdict to be non-contingent or liquidated, a final judgment with preclusive effect must exist.  *See* discussion *infra*.

SF-2721490

quickest and least expensive route is: (i) judgment in the California court; and in response to any appellate concern, (ii) consensual resolution of Hansen's claim pursuant to a new plan of reorganization filed in this Court. Such plan would reflect the California court's judgment and, ideally, the parties' consensually negotiated resolution regarding treatment of Hansen's claims.[80]

35.    Summary statements about creditors (all unsecured) potentially carving up the Debtors,[81] delay imposing "unnecessary" risk on Luna's creditors,[82] considerable inequity to Luna's 2,200 shareholders,[83] and the Debtors' diminished ability to secure capital or credit,[84] even if proven true (and they are disputed by Hansen), are irrelevant for purposes of this Court's inquiry regarding undue delay. Any "cloud"[85] that hangs over Luna is not of Hansen's doing — it is precisely a result of Luna's willful or malicious wrongdoing. Indeed, Luna's asserted conviction that it will prevail in the California court[86] is all the more reason for this Court to eliminate any undue delay, deny the Estimation Motion, and grant Hansen's Lift Stay Motion.

---

[80] On analogous facts in the *Dow Corning* case, the court noted the Debtor's profitable, business-as-usual operation absent the pressure of thousands of stayed breast implant suits. *In re Dow Corning*, 211 B.R. at 564. The court noted, " . . . no party in interest has expressed a desire to see the Debtor dissolved or liquidated at the end of the case. The only question is who will be the owners of the reorganized Dow Corning. Consequently, there is little reason for customers to be anxious." *Id.*

[81] *See* Estimation Motion ¶ 8.

[82] *Id.* ¶ 38.

[83] *Id.* ¶ 9.

[84] *See id.* Presumably, if Luna were concerned about its diminished ability to secure capital or credit, it would not have paid its only secured creditor in full, two days prior to the Petition Date. *See* Lift Stay Motion ¶ 54 n. 66.

[85] *Id.*.

[86] *See* First-Day Transcript at 104:6-9 (Counsel for Debtors, M. Helm, stating, "As for [Hansen's counsel's] claim that we seem to be predisposed to think we're going to lose in California, I really want to diffuse everyone of that notion. We have substantial protections in California, again at the trial level and at the appellate level, to deal with a runaway jury verdict.").

SF-2721490

(1)    **The Cases on Which Luna Relies Are Inapposite and Inapplicable to the Facts at Bar.**

36.    All of the cases cited by the Debtors in support of estimation are distinguishable, and in many cases involve citation to dicta from cases with substantially different fact patterns. With regard to this Court's Stage 1 inquiry, however, the Estimation Motion relies primarily on *Robins*[87] for the proposition that estimation is "mandatory."[88]  But the facts at issue in *Robins* are vastly different from the instant facts, rendering the Fourth Circuit's holding inapplicable in this case.

37.    In *Robins*, the subject company's fate was at risk because the company was overwhelmed by meritorious mass tort litigation.  *Robins* was one of the first mass tort cases, involving hundreds of plaintiffs suing for personal injury.  Resolution of those claims would, indeed, have unduly delayed administration of the Robins estate.  That is not the case here. Hansen is a single litigant in a state court litigation that, at the time it was halted by the Debtors' bankruptcy filing, was on the brink of judgment.  Additionally, the nature of the claims addressed in *Robins* are completely distinguishable from the nearly completed litigation in the Hansen Suit.  Two kinds of claims were at issue in *Robins*: (i) early-stage claims (*i.e.*, potential claims, where injury had not yet manifested), the kind of claims most appropriate for estimation; and (ii) pre-trial stage claims that were a long way from decision, where no estimation was available because the rights of creditors were deemed to be more important than ensuring a speedy reorganization.[89]

---

[87] *In re A.H. Robins Co.*, 880 F.2d 709 (4th Cir. 1989).

[88] *See* Estimation Motion ¶ 32 n.9.

[89]  *See* 28 U.S.C. § 157(b)(5) (amendment to Bankruptcy Code designed to foreclose estimation of personal injury claims).

SF-2721490

38.     The Debtors' reliance on *In re C.F. Smith & Associates, Inc.*[90] is similarly misplaced.  The issue in *C.F. Smith* dealt with estimation based on the merits of an appeal in a state court action involving a sexual harassment claim.[91]  In *C.F. Smith*, neither party objected to the bankruptcy court's estimation, so the question whether it was an appropriate means of resolving the parties' dispute was never before the court. In addition, *C.F. Smith* concerned only monetary claims.  Here Hansen vigorously objects to the application, propriety, and equity of this Court's estimation of Hansen's claims. As detailed herein, Hansen has nonmonetary and equitable causes of action pending in the Hansen Suit, the latter of which cannot be determined via estimation.  Finally, the court in *C.F. Smith* estimated the claim at the full amount of the jury verdict, the pre-judgment interest and attorneys' fees awarded by the state court, and provided for additional awards for post-judgment interest and attorneys' fees and costs for a future appeal.[92]

39.     Debtors rely on *In re Lionel L.L.C.*[93] for the proposition that a court can estimate a sizeable misappropriation claim where the absence of estimation would prevent an effective reorganization and where the delay of awaiting the litigation outcome would threaten the debtor's going-concern value.[94]  In *Lionel*, the bankruptcy court and the district court were effectively in the same position, since either court would be required to adjudicate the trade secrets claim anew.  In this matter, the California jury issued its verdict over three months ago, prior to Luna's filing for bankruptcy; final oral argument on the Post-Trial Issues was imminent.

---

[90] 235 B.R. 153, 158 (Bankr. D. Mass. 1999); *see also* Estimation Motion ¶ 35 n.12.

[91] *Id.* at 157-58.

[92] *Id.* at 173.

[93] *In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539, at *3-5 (Bankr. S.D.N.Y. Aug. 3, 2007).

[94] Estimation Motion ¶ 35 n.13.

SF-2721490

The California court and this Court are thus in wholly different positions — the former near the end of litigation, and the latter facing choices about the beginning.

40.        Debtors also rely on *Bittner v. Borne Chemical Co.*[95] for the proposition that estimation makes "eminent sense in this context because time is of the essence in a Chapter 11 reorganization."[96]  *Bittner* was a case involving shareholders of a debtor corporation who sued the debtor in state court, alleging tortious interference with a proposed merger.  Upon denial of their motion to stay the hearing on confirmation of the debtor's reorganization plan, the shareholders appealed to the district court, which directed the bankruptcy court to hold an estimation hearing to assign value to their tortious interference claims.[97]  The district court affirmed the bankruptcy court's decision to assign zero value to their claims, and the stockholders appealed.  The Third Circuit held that the bankruptcy court did not err in assigning zero value to the shareholders' claims because valuing the shareholders' claims according to present probability of success might have resulted in the shareholders acquiring a significant, if not controlling, voice in the reorganization proceedings, despite the fact that the state court might ultimately decide against those interests after the reorganization.[98]  In *Bittner*, moreover, the state court proceeding was still in its preliminary stages.  The shareholders' claims were contingent and unliquidated.   This is entirely different.  Here, a four-week trial resulted in a $36-million jury verdict in favor of Hansen, thus fixing Hansen's monetary claim.

---

[95] 691 F.2d 134, 137 (3d Cir. 1982); *see also* Estimation Motion ¶¶ 36 n.14, 37 n.19, 42 n.25.

[96] Estimation Motion ¶ 36.

[97] *Bittner*, 691 F.2d at 135.

[98] *Id*. at 137.

SF-2721490

41.     Finally, the Debtors cite to *Sigmon v. Royal Cake Co. (In re Cybermech, Inc.)*[99]

for the proposition that "to realize [the] core goals of Chapter 11, all claims against a debtor must

be resolved."  Hansen does not disagree that a prompt resolution of its claims is warranted, but it

is Judge Huber who is uniquely situated to resolve all the Post-Trial Issues, and who is in the

best position to render judgment promptly, thereby beginning the resolution of Hansen's Jury

Verdict claim in this Court.

42.     Luna's reliance on *Cybermech* is problematic, moreover, in that it assumes

Hansen's post-verdict motions seek exclusively monetary relief.  In *Cybermech*, the federal

appellate court affirmed the district court's judgment that a debtor-seller corporation's return of a

buyer's down payment on a contract for the purchase of machines constituted an avoidable

preferential transfer under 11 U.S.C. § 547(b).[100]  While Luna asserts that "all claims against a

debtor must be resolved" in order to achieve a quick and efficient reorganization,[101] Luna

ignores the fact that (i) the equitable relief (including relief related to Hansen's IP) is not a

"claim" under 11 U.S.C. § 101(5), meaning that the relief cannot be estimated under Section

502(c); (ii) Hansen's monetary claims are neither contingent nor unliquidated, as a result of the

Jury Verdict; and (iii) Judge Huber could enter a judgment more quickly and efficiently than this

Court could estimate Hansen's monetary claims due to the complexity of the parties' underlying

disputes, and the fact that estimation would require commencement of adversary proceedings for

determining IP ownership and other nonmonetary relief.

43.     The cases cited and distinguished above provide just a handful of examples of the

Debtors' reliance on critically distinguishable estimation cases.  That Luna has not cited any case

---

[99] 13 F.3d 818, 821 (4th Cir. 1994); *see* Estimation Motion ¶ 36 n.15.

[100] *Id.* at 819.

[101] *See* Estimation Motion ¶ 36.

SF-2721490

in its Estimation Motion addressing facts remotely similar to the ones currently at issue is a

strong indication that estimation is inapplicable and unprecedented in these circumstances.

### (2)   The Matters Remaining in the Hansen Suit Will Not "Unduly Delay" Administration of Luna's Bankruptcy Case.

44.    As of the Petition Date, all the Post-Trial Issues had been fully briefed for the

California court and set for a morning hearing on July 20, 2009.  The day before Luna filed its

bankruptcy petition, the court informed the parties that the July 20 hearing would have to be

further postponed and offered several hearing dates in early August.[102]  Nonetheless, the only

remaining step to resolve the Post-Trial Issues likely will involve several hours of oral argument

by respective counsel and preparation of any necessary judicial orders or opinions.

45.    Hansen expects that Luna's counsel both for Luna's post-verdict briefing and for

this proceeding stand fully prepared to litigate the Post-Trial Issues.  Indeed, the Debtors have

already spent $910,000[103] on the Munger firm alone dealing just with the post-verdict motions

that they now wish to rebrief and relitigate before this Court by estimation.

46.    Regarding Hansen's nonmonetary relief, forcing relitigation via adversary

proceedings in this Court would be much more time-consuming and expensive.  Even if this

Court were inclined to study the Hansen Suit trial record for purposes of determining the Post-

Trial Issues,[104] as discussed in more detail below, this Court cannot issue a declaratory

judgment, via estimation, with respect to Hansen's IP or resolve other nonmonetary relief.  Nor

---

[102]  While the state judge moved the hearing back two weeks because of a conflict in his schedule, the imminence of the state judge's ruling is indisputable.  *See* Lift Stay Motion ¶¶ 52-56 (discussing indicia of Luna's bad faith as a justification for "cause" to lift the automatic stay).

[103]  *See* Docket No. 42, *"Payments Related to Bankruptcy" in Luna Innovations, Inc. Statement of Financial Affairs, Attachment 9*  (listing prepetition payments made to Munger, Tolles & Olson from June 10, 2009 through July 16, 2009).

[104]  *See* Lift Stay Motion ¶¶ 21-24 (detailing scope of Hansen Suit, including 33,000 documents over one and a half years of discovery, deposition of 26 non-expert witnesses and 6 experts, and 16 post-verdict briefs).

SF-2721490

should this Court allow the Debtors to continue to profit from misappropriated Hansen property for the benefit of Hansen's largest competitor and the Debtors' insiders.  That situation requires entry of equitable and declaratory relief by the California court.  In the alternative, this Court would have to essentially retry the entire Hansen Suit as part of adversary proceedings under Bankruptcy Rule 7001(1), (7), and (9).[105]

47.    Adversary proceedings are not optional for unsettled determinations of property ownership or for declaratory judgments; the Bankruptcy Rules require them.[106]  Determinations of title to IP require the use of adversary proceedings.  In *In re Pasteurized Eggs Corp.*,[107] the debtor moved for an order authorizing and approving sale of substantially all of its assets, including a number of related patent applications, free and clear of all liens, claims, encumbrances, and other interests.  A third party objected based on the debtor's claim of an ownership interest in the patent applications.  In declining to approve the sale with respect to the patent applications, the bankruptcy court explained that "[a] determination of the extent of the Debtor's interest in property is a lengthy and time consuming undertaking because such determination may only be made in an adversary proceeding."[108]

---

[105] *See* Bankruptcy Rule 7001 (noting various types of adversary proceedings, including 7001(1), a proceeding "to recover money or property . . ."; 7001(7), a proceeding "to obtain an injunction or other equitable relief . . ."; and 7001(9), a proceeding "to obtain a declaratory judgment relating to any of the foregoing"); *City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*, 329 F.3d 204, 208 (1st Cir. 2003) (recounting the lower court's opinion that a "claim to title and to recover an asset . . . should be asserted in an adversary proceeding").

[106] *In re Twinton Props. P'ship*, 44 B.R. 426, 428 (Bankr. M.D. Tenn. 1984) ("Bankruptcy Rule 7001(2) provides for an adversary proceeding 'to determine the validity, priority or extent of a lien or other interest in property' and Bankruptcy Rule 7001(9) provides for an adversary proceeding 'to obtain a declaratory judgment relating to any of the foregoing.'  A party claiming to own property held by a debtor in a bankruptcy case should file a complaint to recover that property and that complaint should be treated under the rules provided in Part VII of the Bankruptcy Rules."); *Modanlo v. Mead*, No. DKC 2006-1168, 2006 U.S. Dist. LEXIS 96045, at *8-*9 (D. Md. Oct. 11, 2006) ("The circumstances under which the additional procedures associated with an adversary proceeding are required are provided in Fed. R. Bank. P. 7001"), *aff'd*, 266 Fed. Appx. 272 (4th Cir. 2008).

[107] No. 02-13086-JMD, 2003 Bankr. LEXIS 828 (Bankr. D.N.H. July 15, 2003).

[108] *Id.* at *8.

SF-2721490

48.      In sum, the amount of time required to obtain judgment on the Post-Trial Issues by the California court, as well as any additional time expended by either party or the California court in connection with such a hearing, cannot reasonably be viewed as unduly delaying the administration of Luna's bankruptcy cases, particularly when measured against the time that it would take this Court to resolve such claims.

### (3)      The Amount of Time Required for Appellate Review of the California Court's Judgment Is Irrelevant for Purposes of Considering Undue Delay.

49.      The possibility that the California court's judgment could be appealed[109] has no bearing on the question whether administration of Luna's bankruptcy case would be unduly delayed in the absence of estimation.  Taking Luna's logic to the extreme yields an absurd result — it would mean that in all bankruptcy cases where a parallel litigation proceeding had been automatically stayed prior to judgment, estimation would be mandated by bankruptcy courts because of the possibility of one (or multiple) appeals, and because the judgment itself could not be deemed final until some point in the unforeseeable future.  Luna appears to have disregarded the critical distinction between the post-trial/pre-judgment phase of litigation versus the appeals process, wrongly concluding that in order for a verdict to be non-contingent or liquidated, a final judgment with preclusive effect must exist.

50.      The relevant inquiry for "undue delay" involves how much time is required to reach a judgment, not the hypothetical time it would take to complete appellate review.[110]  Time to appeal is an issue regardless of the forum chosen to adjudicate Hansen's claim against

---

[109] Estimation Motion ¶ 33 ("A judgment from the state court in either party's favor still would leave Luna years away from a final adjudication of Hansen's claims.  A California trial court judgment is not final for purposes of res judicata or collateral estoppel while on appeal, *which would be inevitable in this case* and could take one-and-a-half years to conclude.") (citation omitted) (emphasis added).  *But see Disclosure Statement In Support of Plan* [Docket No. 30] at 29 ("Nor can the Debtors afford a bond to stay enforcement of a judgment of that size pending appeal.").

[110] *See* Abstention Motion ¶ 15 (citations omitted) (noting that the dissatisfied party will likely appeal this Court's estimation determination, and that the consequent appeals process may be as long or longer than appeal would be in the California court system).

SF-2721490

Luna.[111]  There is no reason to think that an adverse decision by this Court on the merits of

estimation would not be appealed by the losing party, as well as being subject to reconsideration

under Section 502(j). The same would be true for adversary proceedings relating to Hansen's

nonmonetary and IP rights.[112]   Considering that the California court already has a two-year head

start, the California appellate system likely will resolve this entire matter faster than if the

adversary proceedings and estimation litigation were tried in this Court and appealed first to the

District Court and then the Fourth Circuit, especially if the parties request to have the California

appeal expedited.[113]

51.    Therefore — assuming a contingent or unliquidated claim exists — the correct

undue delay analysis is whether proceeding to judgment in the Hansen Suit (on issues that have

been fully briefed and are awaiting oral argument) will take more time than completing a Section

502(c) estimation on the merits.  More specifically, the choice this Court has been asked to make

involves either: (i) lifting the automatic stay and allowing the California court to proceed to

judgment; or (ii) completing a Section 502(c) estimation on the merits of Hansen's Jury Verdict

claim, which would, at best, require this Court's study of the trial record and the Post-Trial

---

[111] *See id.* (citations omitted).

[112] To the extent that Luna has continued to misappropriate any of Hansen's IP post-petition, including in conjunction with its dealings with Intuitive, Hansen reserves all rights to file any request for administrative claims, including related relief for both its monetary and nonmonetary relief via adversary proceedings.

[113] *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 777 (Bankr. E.D. Cal. 1990) ("The state appeal is likely to be resolved sooner than the expected federal appeals.  The relative progress of the parallel cases makes the argument for deferring to the state court nearly compelling.")  Moreover, the express purpose of Section 502(c) is "fixing" or "liquidating" a claim so that the dollar amount of a "claim" can be determined, not to provide finality in terms of thwarting appeals.  If a liquidated claim arising from a verdict or judgment is to be appealed, a debtor must address the implications of that appeal through the plan process, not through estimation.  *See Snow v. Countrywide Home Loans, Inc. (In re Snow)*, 270 B.R. 38, 42 (D. Md. 2001) ("Determination of the amount due on account of a creditor's claim . . . [is a] contested matter[] and, thus, may properly be dealt with during the confirmation process.") (citing *In re Beard*, 112 B.R. 951, 955 (N.D. Ind. 1990)); *In re Griffiths*, No. 06-50256-A, 2007 Bankr. LEXIS 1557, at *8 (Bankr. E.D. Va. May 3, 2007) (stating that the value of a claim is properly addressed in the context of confirmation).  Moreover, the "right to a timely reorganization is not frustrated by . . . [the appeal period in an] abstention.  Reorganization plans are commonly confirmed before disputes over claims are resolved." *In re Bellucci*, 119 B.R. at 777.

26

Issues, involving hundreds of hours of work by this Court to understand not only the facts

already found by the jury in the Hansen Suit, but also the record of the litigation, witness

credibility issues, and the trial court's previous rulings.[114]  Given the considerable task that this

would present the Court, it is unrealistic to think the estimation process could resolve Hansen's

Jury Verdict claim in a simple one-day hearing.[115]

52.    The harm to Hansen from the Debtors' objectionable one-day estimation process

would greatly exceed any benefit derived from satisfying the Debtors' desire to exit bankruptcy

within a shortened time frame at minimal inconvenience to its controlling insiders/equity

holders.  Option (i), for entry of judgment, provides the quickest, most cost-efficient and

comprehensive alternative, causing the least delay towards resolving the Debtors' bankruptcy

cases, and is also the option that minimizes the likelihood of additional litigation.

**C.    This Court Cannot Resolve Title to Hansen's IP via Estimation.**

**(1)    Luna's Attempt to Estimate Hansen's Claim for Less Than $1.3 Million Is
Effectively an Unlawful Forced Sale and Conversion of Hansen's IP and
Related Nonmonetary Rights.**

53.    The relief requested in the Estimation Motion seeks to resolve the key issues of

the Hansen Suit via estimation while assuming throughout that Hansen's rights are limited solely

to "claims" for monetary damages.  The Estimation Motion overall makes nothing of the

---

[114] The California jury's factual findings should not be second-guessed by this Court in the Debtors' proposed one-day review of the transcripts and evidence in the Hansen Suit.  Most critical for these purposes is the following illustration from the jury's verdict:  the Debtors willfully or maliciously misappropriated Hansen's IP.  *See* Exhibit 2 ¶ 10.

[115] *See In re A.H. Robins Co.*, 880 F.2d  at 720 n. 13 ("The term 'estimation' is misleading insofar as it suggests a mere guess or a lack of procedure; estimation in bankruptcy can be a full adjudication.") (citation omitted); *In re Dow Corning Corp.*, 211 B.R. at 563 ("[T]here is no guarantee that estimation would in fact move matters along significantly faster [than would liquidation]. To begin with, regardless of the estimation method selected, for the process to have any semblance of fairness it will necessarily involve hearings that would be quite lengthy and protracted. After all, the extremely contentious issues surrounding the tort claims are highly complex and their resolution will require the presentation of many witnesses, many pieces of evidence and extensive oral argument. Abbreviating the time parties have to present their cases at an estimation hearing would, in the Court's opinion, be ill-advised.").

SF-2721490

complexity inherent in the various Post-Trial Issues, and is practically silent regarding the

nonmonetary issues raised by the jury verdict and in Hansen's post-verdict motions.

54.    Despite the California jury award, the Estimation Motion proposes to reduce the

jury verdict as follows:

- Luna would pay Hansen less than $1.3 million;

- For that price, Luna would retain Hansen's IP and otherwise continue to reap the benefits of its wrongful conduct at Hansen's expense;

- Hansen would not be permitted to reclaim title to the IP that Luna wrongfully withheld, or to the technology license to which it is entitled.

- Luna would retain the right to $7 million in deferred profit payments from Intuitive that Luna obtained as a result of misappropriating Hansen's IP, together with any other profits that Luna later could earn from Hansen's IP; and

- Luna would estimate Hansen's attorneys' fees at $391,359.[116]

By seeking to reduce the verdict and estimate Hansen's rights in this way, Luna effectively asks

that this Court find that Hansen's misappropriated IP, and the profits Luna received by virtue of

its misappropriation, now belong to Luna, for under $1.3 million, or approximately 3.5% of the

California jury award.  Hansen's rights include entitlement to certain nonmonetary equitable

relief, including an injunction, specific performance, and a declaratory judgment of ownership of

the IP developed pursuant to the TCA.  Despite the Debtors' contentions, such determinations

---

[116] *See* Estimation Motion ¶ 68.  Luna's Estimation Motion states that Hansen has asked for $6 million in attorneys' fees.  Estimation Motion ¶ 66.  Luna fabricated this number; it is nowhere in Hansen's papers on this issue.  Instead Hansen has asked for a determination that it is entitled to fees and guidance on the claims that may be recovered, with the amount to be resolved through stipulation or the post-trial bill of costs process.  Con. App. Tab 23 at 23.  This Court can, however, weigh the fees Luna would have it estimate for Hansen (for two years of successful litigation) against the $910,000 Luna has paid its litigation counsel in just six weeks.  *See supra* note 109, and accompanying text.

SF-2721490

cannot be made under Section 502(c) since "claims" are limited in Section 101 to "rights to payment" (as explained below).

**(2)      Affirmation of Property Ownership Is Not a "Claim."**

55.      Hansen's IP and other non-monetary rights are not "claims" capable of being estimated.  Estimation is designed to fix the dollar amount of a prepetition "right to payment" on a claim — not to determine property or other nonmonetary rights, which must be addressed pursuant to state court litigation or a properly commenced adversary proceeding.  The same is true for all the Post-Trial Issues relating to Hansen's IP rights and other nonmonetary relief.

56.      Luna has sought to retain (and potentially continue misusing), for less than $1.3 million, the same IP that the jury concluded Luna had willfully or maliciously misappropriated from Hansen, in effect seeking a transfer of title to Hansen's IP, which is tantamount to a forced sale, not to mention a fundamental violation of the Fifth Amendment and due process.  This effort to transfer title to Hansen's IP does not involve estimation of "a right to payment."[117] Therefore, ownership of IP and nonmonetary rights of Hansen's are not "claims."[118] A "claim" under § 101(5)(B) includes a "right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment* . . . ."[119]  Section 502(c), therefore, only provides for the estimation of rights to payment of money.  A determination of ownership of IP following Luna's

---

[117] *See* definition of "claim" at 11 U.S.C. §101(5)(A).

[118] *Irizarry v. Schmidt (In re Irizarry)*, 171 B.R. 874, 878 (B.A.P. 9th Cir. 1994) ("[T]he equitable remedies of cancellation of the grant deed, recovery of the . . . [p]roperty and cancellation of liens are not claims or debts subject to discharge.").

[119] 11 U.S.C. §101(5)(A) (emphasis added).

SF-2721490

willful or malicious misappropriation is no such "claim,"[120] and similarly, Hansen's other nonmonetary rights do not give rise to a claim that can be estimated.

### (3)   Hansen's IP Cannot Vest in the Debtors via Estimation.

57.   While the Debtors may attempt to use their proposed Plan to bury the complex property issues that were pending for declaratory relief in the California court, neither plans of reorganization, nor estimation, can convert nondebtor property.   A debtor is not authorized to keep or sell property that it does not own.[121]   A bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the debtor in fact owns the property.[122]   The fundamental question of ownership must be decided before property can be sold by a debtor.[123]

58.   The Estimation Motion effectively seeks to force a sale of Hansen's IP without addressing the underlying ownership issues.   This Court should not sanction such an unjust result under Section 502(c), especially where the misappropriation was, as the California jury found,

---

[120] *Lippe v. Genlyte Group, Inc.*, No. 98-Civ-8672 (DC), 2002 U.S. Dist. LEXIS 6024, at *9 (S.D.N.Y. Apr. 8, 2002) (noting that by asserting ownership interest in property, nondebtor was "not asserting a 'claim' or seeking money; it was merely seeking to quiet title to the [p]roperty.").

[121] *See, e.g.*, *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) ("Because the separate property home of . . . the nondebtor former spouse, was not included or owned . . . with the property of the Debtor's bankruptcy estate, the Trustee lacked authority to sell her home as 'property of the estate'") (internal citation omitted).

[122] *See In re Rodeo Canon Dev. Corp.*, 362 F.3d 603, 608 (9th Cir. 2004), *op. withdrawn per settlement*, Nos. 02-56999, 02-57203, 2005 U.S. App. LEXIS 3802 (9th Cir. Mar. 8, 2005) (property could not be sold free and clear of liens, claims, and encumbrances when debtor's title was in dispute as to whether it was owned by the partnership or the partner) (citing *Connolly v. Nuthatch Hill Assocs. (In re Manning)*, 831 F.2d 205, 207) (10th Cir. 1987) and followed by *In re Claywell*, 341 B.R. 396 (Bankr. D. Conn. 2006).

[123] *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) (sale free and clear of claims denied because not property of the estate); *Gorka v. Joseph (In re Atl. Gulf Cmtys. Corp.)*, 326 B.R. 294 (Bankr. D. Del. 2005) (sale of real property under section 363 not free and clear of claims because title in dispute); *In re Claywell*, 341 B.R. 396 (sale disallowed pending resolution of debtor's ownership in property).

SF-2721490

willful or malicious.  The Debtors have unclean hands and are ineligible for any equitable

relief.[124]

> **(4)      Luna Cannot Rely on the Equitable Powers of this Court to Obtain
> Ownership of Hansen's IP.**

59.     The remedy Luna seeks via estimation regarding Hansen's IP is ultimately

dependent on the scope of this Court's equitable powers.[125]  Not only is equitable relief not

subject to estimation under Section 502(c),[126] but as noted by the Fourth Circuit in *A.H. Robins*,

a court's duty to estimate claims is necessarily dependent on the existence of a "*proper case

under section 502(c) . . .*"[127]  Equity does not permit a party with unclean hands to profit from

his or her wrongs; that party can be equitably estopped from recovery.[128]  Because the jury

specifically found that Luna "willfully or maliciously" misappropriated Hansen's IP,[129] Luna

cannot rely either on Section 105(a) or Section 502(c) as a means of retaining the IP it

misappropriated, while receiving additional unjust enrichment based on its agreement with

Intuitive or otherwise.

---

[124] *See* discussion at immediately following section (discussing limits of this Court's equity power under 11 U.S.C. § 105(a)).

[125] *See* Estimation Motion ¶ 11 (citing to Section 105(a) of the Bankruptcy Code as a statutory basis for relief); *see also id.* ¶ 44 (noting that this Court has broad discretion in setting the scope and procedure for estimation).

[126] *See Newcom Holdings Pty. Ltd. v. Imbros Corp*. 369 F. Supp. 2d 700, 711, 713 (E.D. Va. 2005) (stating that declaratory judgment is a form of equitable relief and that, in pursuing a declaratory judgment seeking to quiet title to a patent application, plaintiff invoked the equitable powers of the court).

[127] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011-12 (4th Cir. 1986).

[128] *See Newcom Holdings*, 369 F. Supp. 2d at 713 (citing *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000) ("Unclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct."); *Denny's, Inc. v. Cake*, 364 F.3d 521, 527, n.6 (4th Cir. 2004) (stating that where plaintiff sought a declaratory judgment together with an injunction and the "underlying controversy" was "equitable" in nature — an effort to force defendant, via an injunction, to comply with state law — the declaratory relief sought clearly qualified as equitable relief).

[129] *See* Exhibit 2 ¶ 10.

SF-2721490

### D.    Judicial Economy Favors Resolution of Hansen's Claim by the California Court, Rather Than by Estimation.

60.    As detailed more fully in the Lift Stay Motion,[130] judicial economy requires that the California court be permitted to proceed to judgment, rather than have this Court duplicate the California jury's and Judge Huber's efforts via estimation.[131]  Simply permitting the California court to conduct its final post-trial hearing and enter judgment on the jury verdict would obviate any purported need to estimate Hansen's claim and any ensuing litigation in this Court.  It would be less expensive and more efficient to allow the California judge familiar with the issues to conclude the judgment, rather than for this Court to attempt to familiarize itself with the issues prior to determining the underlying merits of these disputes.

61.    Additionally, because certain nonmonetary issues relating to Hansen's Post-Verdict Motions can never be estimated, it would be inefficient to bifurcate the nonmonetary issues for retrial in one court, from the monetary issues in another.  For these reasons, it would be most efficient to allow the California court, acting in a single forum under a single proceeding, to promptly rule on all the Post-Trial Issues.

### (1)    Even If this Court Could Proceed with Estimation, the Costs Associated with Such Process Would Add Significant Time and Expense.

62.    Hansen seeks a cost-effective resolution of this case *and* stands fully prepared to take any necessary action to protect its rights.  The Debtors' estimation strategy is a threat to Hansen's core business and well being.  The inevitable result of the Debtors' strategy would *not*

---

[130] *See* Lift Stay Motion ¶¶ 37-41.

[131] *See Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir. 1997) (acknowledging that the determination of whether appellee was held liable in a contribution action would impact the handling and administration of the bankruptcy estate by changing the character of appellee's indemnification claim against the debtor from contingent and unliquidated to certain and liquidated, thus obviating the need to estimate the amount of appellee's claim under Bankruptcy Code § 502(c)); *see also In re Robbins*, 964 F.2d 342, 346 (4th Cir. 1992) (noting that it would be less expensive and more efficient to let the judge familiar with the five-year history of the case to conclude the case than to have the bankruptcy court make a determination regarding the merits of the case); *In re Dow Corning Corp.*, 211 B.R. 545.

SF-2721490

be a quicker or cheaper end to this case. By allowing the California court judgment to be entered and denying the Estimation Motion, this Court can create the essential condition for a prompt resolution of Hansen's Jury Verdict claim, while at the same time minimizing the need for additional litigation.

63.    For all these reasons, this Court should deny the Estimation Motion and allow the California court to consider Luna's post-trial motions, enter judgment, and quell any further debate. Section 502(c) was never intended to allow a bankruptcy court to act as an appellate court and supplant the final step in a state court judgment process.[132]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

---

[132] *See* Abstention Motion ¶ 4 (noting that 28 U.S.C. § 1334(c)(1) enables bankruptcy courts to abstain from proceedings "in the interest of justice, or in the interest of comity with State courts, or respect for State law.").

SF-2721490

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Hansen respectfully requests that this

Court (i) deny the Estimation Motion; and (ii) grant any additional relief that this Court deems

necessary.

Dated: August 10, 2009                    HANSEN MEDICAL, INC.
        Richmond, Virginia

      */s/ Tara L. Elgie*

HUNTON & WILLIAMS LLP
Benjamin C. Ackerly [VA BAR # 09120]
Tara L. Elgie [VA BAR # 48259]
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Phone: (804) 788-8327
Fax: (804) 343-4687

MORRISON & FOERSTER LLP
John P. Corrado VA BAR #20247
Joshua Hartman VA Bar #77894
Alexandra Steinberg Barrage, *admitted pro hac vice*
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 887-1500

– and –

MORRISON & FOERSTER LLP
G. Larry Engel, *admitted pro hac vice*
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000

*Co-Counsel to Hansen Medical, Inc.*

34

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 10, 2009, I caused the foregoing to be filed electronically with the Clerk of Court using CM/ECF.  I also certify that I caused the foregoing document to be served this day via (i) overnight mail, postage pre-paid on the attached Service List A, (ii) first class mail, postage prepaid on the attached Service List B, and (iii) electronic transmission to all notice parties via the Court's CM/ECF System.

By:    */s/ Tara L. Elgie*
      Benjamin C. Ackerly (VSB #09120)
      Tara L. Elgie (VSB #48259)
      **HUNTON & WILLIAMS LLP**
      Riverfront Plaza, East Tower
      951 E. Byrd Street
      Richmond, VA 23219
      Telephone: (804) 788-8200
      Facsimile: (804) 788-8218
      *Counsel for Hansen Medical, Inc.*

## SERVICE LIST A

Laura Davis Jones., Esq.
Timothy P. Cairns, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Stret, 17th Floor
P O Box 8705
Wilmington, DE 19899-8705

Magee Foster Goldstein & Sayrs
ATTN:  A Carter Magee
P O Box 404
Roanoke, VA 24003

Munger Tolles & Olsen, LLP
ATTN:  Mark Helm, Esq.
          Seth Goldman, Esq.
355 South Grand Avenue
35th Floor
Los Angeles CA 90071-1560

John R. Byrnes, Assistant U.S. Trustee
Margaret K. Garber, Trial Attorney
Office of the United States Trustee
210 First Street, S.W., Suite 505
Roanoke, VA 24011

## SERVICE LIST B

HANSEN MEDICAL, INC.
380 North Bernardo Ave.
Mountain View, CA 94043

CARILLION CLINIC
c/o Carilion Roanoke
Memorial Hospital
First Floor
Roanoke, VA 24033

WILSON SONSINI GOODRICH ROSATI
650 Page Mill Rd
Palo Alto, CA 94304-1050

INTUITIVE SURGICAL, INC.
1266 Kifer Rd.
Bldg 101
Sunnvale, VA 94086

AMERICAN EXPRESS
PO Box 5207
Fort Lauderdale, FL 33310-5207

CORNERSTONE RESEARCH
PO Box 487
Stuarts Draft, VA 24477

R&D STRATEGIC SOLUTIONS
PO Box 414541
Boston, MA 02241-0541

LOCKTON COMPANIES, INC.
PO Box 630333
Baltimore, MD 21263-0333

WILEY X EYE WEAR
7491 Longard Dr.
Livermore, CA 94551

LICOR BIOSCIENCES
4647 Superior Street
Lincoln, NE 68504-5000

NBS DESIGN, INC.
2950 Patrick Henry Drive
Santa Clara, CA 95054

VA POLYTECHNIC & STATE UNIV.
1880 Pratt Drive
Suite 2006
Blacksburg, VA 24060

VA TECH-ENGR SCI & MECHANICS
Office of Sponsored Programs
460 Turner St., Suite 306
Blacksburg, VA 24060

OFS FITEL LLC
55 Darling Dr.
Avon, CT 06001

BAKER HUGHES PRODUCTION QUEST
309 North Knollwood Drive
Blacksburg, VA 24060

INTERTOX
600 Stewarts St.
Suite 1101
Seattle, WA 98101

UCSD SCHOOL OF MEDICINE
9500 Gilman Dr. #0746
La Jolla, CA 92093

ENABLENCE
400 March Rd.
Ottawa, ON K2K 3H4

UNIVERSITY OF SOUTH CAROLINA
1200 Catawba St.
Columbia, SC 29208

CANVASBACK LAND TRUST CORP
C/O Virginia National Bank
P.O. Box 2853
Charlottesville, VA 22902

IPC TECHNOLOGIES
7200 Glen Forest Dr.
Suite 100
Richmond, VA 23226

NATIONAL INSTRUMENTS
P.O. Box 202262
Dallas, TX 75320

RTI INTERNATIONAL
3040 Cornwallis Rd.
Research Triangle Park, NC 27709

UNIV OF ALABAMA HUNTSVILLE
Office of Sponsored Programs
Huntsville, AL 35899

VIRGINIA DEPARTMENT OF
TAXATION
P.O. Box 1777
Richmond, VA 23218

TRITON SYSTEMS, INC.
200 Turnpike Rd.
Chelmsford, MA 01824

THORLABS INC
435 Route 206
Newton, NJ 07860-0366

PIKEWERKS CORP.
108 Madison Pointe Place
Madison, AL 35758

THERMOTRON INDUSTRIES
111 E. Wisconsin Ave.
Milwaukee, WI 53202

UNIVERSITY OF NEW HAMPSHIRE
51 College Road
Durham, NH 03824

NU HORIZONS ELECTRONICS CORP
70 Maxess Rd.
Melville, NY 11747

WEST VA UNIVERSITY RESEARCH
886 Chestnut Ridge Road
Morgantown, WV 26506

ELMA ELECTRONIC, INC.
44350 Grimmer B1vd.
Fremont, CA 94538

VWR INTERNATIONAL INC.
PO Box 640169
Pittsburgh, PA 15264-0169

NTELOS
PO Box 580423
Charlotte, NC 28258-0423

Ellen W. Slights, Esquire
United States Attorney's Office
District of Delaware
1007 N. Orange Street, Suite 700
Wilmington, DE 19801

Eric H. Holder, Jr., Esquire
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

Secretary of Treasury
P.O. Box 7040
Dover, DE 19903

Secretary of Treasury
15th & Pennsylvania Avenue, N.W.
Washington, DC 20220

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114-0326

Attn: Insolvency
Internal Revenue Service
1352 Marrows Road, 2nd Floor
Newark, DE 19711-5445

Mark Schonfeld, Esquire
Regional Director
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281-1022

Michael A. Berman, Esquire
Securities & Exchange Commission
Office of General Counsel-Bankruptcy
100 F Street, N.E.
Washington, DC 20549

Matthew Berry, Esquire
Office of General Counsel
Federal Communications Commission
445 12th Street, S.W.
Washington, DC 20554

Office of the General Counsel
Pension Benefit Guaranty Corp.
1200 K Street, N.W.
Washington, DC 20005-4026

DCMA Southern Virginia
2045 N. Franklin Street, Suite E
Christiansburg, VA 24073

City of Danville
Office of Economic Development
427 Patton Street
P.O. Box 3300
Danville, VA 24543

The Virginia Tobacco Indemenification and
Community Revitalization Commission
701 E. Franklin Street, Suite 501
Richmond, VA 23219

Virginia Economic Development
Partnership
901 East Byrd Street
P.O. Box 798
Richmond, VA 23218

Harold McElhinny, Esquire
Arturo Gonzalez, Esquire
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Bryan Wilson, Esquire
Jana Gold, Esquire
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304-1018

Civil Process Clerk
Office of the United States Attorney
Western District of Virginia
310 1st Street, S.W., Room 906
Roanoke, VA 24011

Bill Mims, Attorney General
Commonwealth of Virginia
900 East Main Street
Richmond, VA 23219

Commonwealth of Virginia
Department of Taxation – Legal Unit
P.O. Box 2156
Richmond, VA 23218

Julia C. Dudley, US Attorney
Thomas L. Eckert, Assist. US Attorney
Western District of Virginia
P.O. Box 1709
Roanoke, VA 24008-1709

Richard C. Maxwell, Esquire
Woods Rogers PLC
P.O. Box 14125
Roanoke, VA 24038

Michael E. Hastings, Esquire
LeClair Ryan
1800 Wachovia Tower, Drawer 1200
Roanoke, VA 24006

American Express Corp.
Attn: U.S. Payment Center
2965 W. Corporate Lake Boulevard
Weston, FL 33331

Cornerstone Business Solutions
Attn: Accounts Payable Manager
3278 Stuarts Draft Hwy., Ste. 6
Waynesboro, VA 22980

Protective Optics, Inc.
Attn: Accounts Payable Manager
P.O. Box 60000
File 30669
San Francisco, CA 94160

Office Of Sponsored Program
1880 Pratt Drive, Suite 2006
Blacksburg, VA 24060

Treasurer, Virginia Tech
Office of Sponsored Programs
Attn: Accounts Payable Manager
460 Turner Street, Suite 306
Blacksburg, VA 24060

OFS Fitel, LLC
Attn: Accounts Payable Manager
P.O. Box 27349
New York, NY 10087-7349

Regents Of The Univ. of CA
Attn: Maria Pacheco
9500 Gilman Drive #0746
UCSD-ID #27-1175
La Jolla, CA 92093-0746

RTI International
Attn: Accounts Payable Manager
P.O. Box 900002
Raleigh, NC 27675-9000

Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801